**Robert LEONARD, Appellant,**

v.

**Carl W. VROOMAN, Trustee in Bankruptcy, Appellee.**

**No. 21159.**

United States Court of Appeals
Ninth Circuit.

Sept. 19, 1967.

Robert Leonard, in pro. per.

Walter W. Patterson, Banning, Cal., for appellant (co-counsel).

Edgar C. Keller, San Bernardino, Cal., for appellee.

Before BARNES and JERTBERG, Circuit Judges, and MUECKE, District Judge.

MUECKE, District Judge:

This is an appeal from a judgment of the District Court affirming an order of the Referee in Bankruptcy, enjoining and restraining appellant from proceeding any further with an action in State Court against a trustee in bankruptcy.

On April 27, 1964, John Todd and his wife filed voluntary petitions in bankruptcy. Carl W. Vrooman, appellee herein, was appointed as receiver of the bankrupt estates by the Referee in Bankruptcy on April 28, 1964. He qualified as such by furnishing a bond in the amount of $2500.00 with the Fidelity & Casualty Company of New York as surety.

Among the assets of the estate were certain goods—grocery stock (some perishable) and store equipment—which were located in a building, which prior to bankruptcy, had been under lease from Walter W. Patterson to the bankrupt. While the written lease for a rental of $150.00 per month, which is attached to lessor's proof of claim in bankruptcy, is for a term of one year commencing on October 15, 1963, the testimony in the case indicates that the bankrupt had relinquished the keys to his lessor several days before filing bankruptcy. He, however, left his stock of goods therein without apparent objection of the lessor.

Having attempted to locate the owner of the building, or the bankrupt, and having been unable to do so, the receiver, in the company of the local constable, took possession of the premises on May 1, 1964 and posted notices regarding his name, possession, authority, and location.* He then placed his own locks upon the doors.

Thereafter, having been appointed trustee of the estate on May 20, 1964 and having executed a bond in the sum of $2500.00 issued by the same surety, Vrooman discovered, upon examination of the records in Riverside County, California, a deed recorded March 27, 1964 transferring the building in question from Todd, the bankrupt, to one Walter W. Patterson. Although the recording was delayed until March 27, 1964, the transfer had apparently taken place in September, 1963, according to the date of the deed. Another deed recorded April 27, 1964, the day the Todds filed their bankruptcy petitions, indicated a further transfer from Patterson to Leonard, the appellant herein.

Vrooman requested Leonard to answer questions concerning the above mentioned transfers of the building, and Leonard refused to answer voluntarily. There-

fore, on July 16, 1964, a 21a. hearing, Bankruptcy Act § 21(a), 11 U.S.C. § 44 (a), was held, at which time, according to Leonard, Walter W. Patterson was in Europe and could not be present. Leonard also could not explain any of the circumstances of the transfer of the property in question from the bankrupt to Patterson. Subsequent to taking possession, appellee Vrooman also discovered that the bankrupt had executed a trust deed on the property in favor of Glens Falls Insurance Company in January, 1964 and that he had made representations in a financial statement of February 18, 1964 that he owned the property. Obviously, the trust deed was executed after the transfer to Patterson in September, 1963, as was the financial statement.

On November 17, 1964, the trustee filed a petition in the Bankruptcy Court for an order to show cause, naming, among other respondents, Robert Leonard and Walter Patterson. The order to show cause required Patterson and Leonard to show cause why the property should not be sold by the trustee free and clear of any claim by them. The hearing on the petition, originally set for December 1, 1964, was continued—once upon stipulation and once because of the illness of respondent Patterson—and was finally heard on February 1, 1965, at which time the Referee found in favor of Patterson and Leonard and against the trustee. On April 23, 1965, the Bankruptcy Court entered its formal determination that the building was owned by Leonard and that he had the right to possession. This order gave the trustee five days within which he was to relinquish possession. The record is clear that the trustee did relinquish possession on April 24, 1965.

Further evidence of the trustee's doubts concerning the validity of the transfers is found in his petition for order to show cause wherein he refers to

---

* There exists a dispute concerning the existence of a sign relating to Mr. Patterson's ownership and location. Appellant contends that there was a sign on the door of the store declaring Mr. Patterson's ownership and where he might be located. The appellee does not deny the existence of such a sign but says he does not remember whether or not one was on the door when he entered to take possession of the goods in the store.

his beliefs that the transfers were without full or adequate or any consideration and that they were made at a time when the bankrupt was insolvent and the receivers of the instruments of transfer knew at the time of transfers that the bankrupt was then insolvent.

The Referee, on the trustee's petition for order to show cause, made the following finding of fact:

"4. That said petitioner-trustee never acquired or had any right, title, claim or interest in or to said property since the filing of any petition in bankruptcy herein, and up to, and at the time of said hearing, and then had no right, title, claim, or interest in or to said property."

The Referee at the same time entered the following conclusion of law:

"2. That Respondent Robert Leonard is, and at all times herein was the sole owner of the parcel of property last above described, including the above building therein, subject only to the claim of Respondent, Mrs. Robert Leonard, his wife, thereto as community property, and entitled to the possession thereof."

The record from the court below is replete with indications that the trustee had grave doubts concerning the validity of the transfers between Todd and Patterson and between Patterson and Leonard and that these doubts were the main factor in his refusal to relinquish the property without an order from the Court. For example, the text of respondent's Exhibit No. 1, a communication from the trustee to Leonard, dated June 9, 1964, is as follows:

"Dear Mr. Leonard,

Captioned individuals were adjudicated bankrupts on 4/27/64, the same date your deed was recorded in County Recorder's Office in Riverside. In addition Todd's transfer to Patterson was recorded by deed only one month prior to the bankruptcy on 3/27/64 at which time Todd was insolvent.

There always appears a controversy relative to the validity of such transfers within four months of bankruptcy. *Cont. 1st Meet. of Creditors 9:30 am 7/2/64*

For your information, I properly seized the premises of 22nd Street Market, at the request of Todd's Attorney as perishable mdse. was being spoiled in market. Appointment as Receiver at Court order & for two days neither Bankrupt or Patterson were available.

/s/ Carl W. Vrooman"

On August 25, 1965, Leonard filed suit in the Municipal Court of Riverside County, California against Vrooman personally and against Fidelity & Casualty Co. of New York, which executed as surety, Vrooman's qualifying bond. Leonard sued for $12.00 a day damages for the duration of Vrooman's occupancy, or from May 1, 1964 through April 24, 1965, for a total of $4,296.00. The damages sought to be recovered from Vrooman personally and not from the bankrupt's estate, were for acts of Vrooman that it is alleged were in violation of his duties as receiver and trustee when he took and retained possession of the real property belonging to Leonard. At Vrooman's request, by an order dated November 9, 1965, the Referee temporarily restrained prosecution of the above state court suit and on November 18, 1965, that restraining order was made permanent. On February 25, 1966, a motion by Leonard to discharge the restraining order was denied.

As a consequence of the hearing in the Bankruptcy Court to determine comparative interests in the property, the Referee found that Leonard did not make any objection to the Court's jurisdiction but rather submitted to that jurisdiction and made his case for ownership of the property in question. The Referee also found that Leonard had not made any claim for reclamation or for administrative rents. He further determined that the bankrupt estate has *not* been closed and that its administration continues.

The findings of fact entered by the Referee do not differ in any material respect from the facts set forth here except as the Referee's findings have been

amplified here by a search of the record to give a more complete account of the facts of this case. Included also in the findings of the Referee is the conclusion without further amplification, that the state law suit will hinder the administration of the bankrupt estate. In affirming the Referee, the United States District Court for the Southern District of California adopted in toto the findings of fact and conclusions of law filed by the Referee on Petition for Review.

Essentially, the question presented to this Court is whether the Bankruptcy Court has jurisdiction to enjoin the plaintiff from proceeding with an action in the state court against a trustee in bankruptcy and his surety where the plaintiff seeks damages for the trustee's seizure and possession of real property owned by the plaintiff.

■ It is undisputed that a trustee in bankruptcy is an officer of the Court, Bankruptcy Act § 1(22), 11 U.S.C. § 1 (22); Bankruptcy Act § 33, 11 U.S.C. § 61; and that as such, he is not subject to suit without leave of the appointing court for acts done in his official capacity and within his authority as an officer of the Court. 2 Collier, Bankruptcy § 23.20 (14th ed. 1966); Vass v. Conron Bros. Inc., 59 F.2d 969 (2d Cir. 1932).

■ It is equally certain that when a trustee acts in excess of his authority and is sued in a state court for such acts, he will not be protected by the injunctive power of the Bankruptcy Court, except in cases where the state court suit affects the bankrupt estate or its administration, 2 Collier, Bankruptcy § 23.20 (14th ed. 1966), or where the equities of the case may demand injunctive relief. 1 Collier, Bankruptcy § 2.30 (14th ed. 1966); Bumb v. Bonafide Mills, Inc., 327 F.2d 544 (9th Cir. 1964).

■ It follows then that a trustee wrongfully possessing property which is not an asset of the estate may be sued for damages arising out of his illegal occupation in a state court without leave of his appointing court.

It may be true that under the facts of this case, the trustee had ample reason to believe that there had been a preferential transfer or a transfer in fraud of creditors. For example, it is clear that the transfers of the property were recorded within four months prior to the filing of the petition; that the bankrupt had owned the premises before filing the petition; that the bankrupt at the time the petition was filed, had personal property inside the premises, ostensibly under a lease (which in reality had been terminated); that the bankrupt listed the premises as his own property in a financial statement executed after the alleged transfer to Patterson; and that Leonard, the actual owner, was very uncooperative when the trustee sought to ascertain information regarding the transfers which resulted in Leonard's obtaining title.

All of these matters nevertheless, form no basis for staying the appellant from proceeding with the state court action, but are really defenses (along with laches) that may be available to the trustee in the state court action.

The receiver-trustee really made two mistakes in this case. His first was to break into and seize possession of the real property belonging to Leonard, when this property was not listed as an asset of the bankrupt's estate.

His second mistake was not to relinquish possession of the real property when he discovered that title was claimed by and recorded in the name of Leonard.

■ It is true the receiver-trustee is charged by the Bankruptcy Act with gathering assets of the bankrupt, and that his failure to act diligently in this respect could result in a claim against him. In re Reinboth, 157 F. 672 (2d Cir. 1907); In re Power, 115 F.2d 69 (7th Cir. 1940). Yet this diligence in this case was misdirected and should have been exercised in ways other than by forcible entry and retention of possession.

■ Under the circumstances here involved, the trustee initially could have

and should have obtained a turnover order directing delivery to the trustee of the *personalty* which was an asset of the bankrupt estate. 2 Collier, Bankruptcy § 23.10 (14th ed. 1966).

For a determination of whether there had been a conveyance of the real property by the bankrupt in fraud of creditors, or with preference to particular creditors, an action could have been brought by the trustee against those claiming title, to have the conveyance of title to them set aside. Bankruptcy Act § 60(d), (e), 11 U.S.C. § 96(d), (e); Bankruptcy Act § 67, 11 U.S.C. § 107.

In neither case would it have been necessary for the receiver-trustee to have taken possession of the real property here involved without first having obtained an order of the Court specifically directing him to do so.

It could be said that this is all well and good—that hindsight is better than foresight—and that a receiver-trustee should not be subject to suit when he acts reasonably under the circumstances and in good faith. To subject a trustee to suit, under these circumstances, it might be charged, is to encourage caution and timidity and to so hobble a trustee that he will not act diligently to gather the assets of a bankrupt and prevent fraud.

Congress has, in fact, recognized in the case of a trustee's communications, that he is not liable for statements made in connection with his official capacity which are uttered in good faith and with reasonable grounds for belief in their truth. Bankruptcy Act § 21(i), 11 U.S. C. § 44(i).

While there is no language in the Act which explicitly provides a similar immunity for acts, yet such a standard is implicit. For example, in this case, the trustee might have taken possession of the premises in a lawful manner in order to dispose of the personalty. Payments would then be due for administrative rent. A controversy might have arisen as to whether the trustee's occupancy of the premises was unduly long, with the claim asserted that the estate should not pay for any such excess occupancy, and that this would properly be a claim against the trustee personally.

This question would then be resolved by determining the length of time reasonably calculated to carry out the obligations the trustee has with respect to the personalty he has the duty to collect.

Yet we are faced at the outset with the finding of fact and conclusion of law made by the Referee on the trustee's petition for order to show cause filed November 7, 1964. The Referee specifically found and concluded that the trustee never at any relevant time had any right, title, claim, or interest in the property and that Leonard had all right, title, claim, and interest including the right to possession.

While the trustee may have had reasonable grounds and probable cause to believe that a fraud had been committed, and while he may have acted in good faith, the foregoing findings and conclusions entered by the Referee preclude a reopening of this matter.

Under the law as heretofore set forth, the trustee may be sued without leave of Court. Therefore, the injunction was improvidently granted, the Referee being without the requisite jurisdiction.

For the foregoing reasons, the District Court erred in affirming the Referee. It follows that the judgment and order appealed from is reversed.