STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

BETTER BRITE PLATING INC., a Wisconsin corporation, Defendant,

The ZINC SHOP, INC., a Wisconsin corporation, Defendant-Co-Appellant,

David J. MATYAS, Trustee, Defendant-Appellant,

John E. ZENNER, Defendant-Co-Appellant.

Supreme Court

*No. 90–0280. Oral argument January 23, 1992.—Decided May 19, 1992.*

(Also reported in 483 N.W.2d 574.)

For the plaintiff-respondent-petitioner the cause was argued by *Robert M. Hunter,* assistant attorney gen-

eral, with whom on the briefs was *James E. Doyle,* attorney general.

For the defendant-appellant there was a brief and oral argument by *David J. Matyas,* DePere.

For the defendant-co-appellant, John E. Zenner, there was a brief by *Joseph C. Niebler* and *Niebler & Muren, S.C.,* Brookfield and oral argument by *Joseph C. Niebler.*

Amicus curiae brief was filed by *Roy L. Prange, Jr.* and *Quarles & Brady, John M. Van Lieshout* and *Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C.* and *Susan Van Lieshout Kelley* and *Murphy & Desmond, S.C.,* all of Madison, for Bankruptcy, Insolvency and Creditors' Rights Section of the State Bar of Wisconsin.

DAY, J. This is a review of a published decision of the court of appeals,[1] which affirmed in part, reversed in part, and remanded a judgment of the Circuit Court for Brown County, N. Patrick Crooks, Judge, granting partial summary judgment in favor of plaintiff, the State of Wisconsin, against defendants Better Brite, The Zinc Shop, Inc., and John E. Zenner and David J. Matyas personally.

We conclude that Wisconsin courts have no jurisdiction over defendants John E. Zenner or David J. Matyas personally and therefore dismiss the case against them for lack of jurisdiction.

This case arises out of a suit brought by the State of Wisconsin against Better Brite Plating, Inc. (Better Brite) a Wisconsin corporation; The Zinc Shop, Inc. (Zinc Shop) a Wisconsin Corporation; John E. Zenner (Zenner), bankruptcy examiner with powers of a trustee

---

[1]*State v. Better Brite Plating, Inc.,* 160 Wis. 2d 809, 466 N.W.2d 239 (Ct. App. 1991).

367

for Better Brite; and David J. Matyas (Matyas), bank-ruptcy trustee for Better Brite. The claims against defendants Zenner and Matyas are for personal liability and are the only claims we consider.

The factual and procedural history of this case is complex and will be detailed later in the opinion. Basi-cally, however, the State filed a Complaint on September 13, 1988, alleging that defendant Zenner, after being appointed examiner with the powers of a trustee for Better Brite in a Ch. 11 bankruptcy reorganization pro-ceeding, and defendant Matyas, after being appointed trustee for Better Brite in a Ch. 7 liquidation proceed-ing,[2] each violated Wisconsin's Hazardous Waste Man-agement Act, secs. 144.64 to 144.74 Stats., 1985–86, by storing hazardous waste for a period in excess of 90 days without obtaining a license from the Department of Nat-ural Resources (DNR) as required by sec. 144.64(2) Stats.[3] The State sought forfeitures and penalties under

---

[2]Under the Bankruptcy Code, 11 U.S.C. 101, *et seq.,* one of several court officers may be authorized to continue the operation of an enterprise in bankruptcy: a trustee, an examiner with the powers of a trustee, or a debtor in possession. For our purposes, there is no difference between an examiner with powers of a trustee and a trustee. Therefore we will refer to Zenner and Matyas as trustees.

[3] **144.64 Licenses.**

. . ..

(2) TREATMENT, STORAGE OR DISPOSAL. (a) The storage of haz-ardous waste at the generation site by the generator of that waste for a period of less than 90 days is not subject to this subsection. The storage of hazardous waste for a period of less than 10 days is exempt from this subsection if the storage is in connection with the trans-portation or movement of the hazardous waste. Notwithstanding the exemptions granted under this paragraph, no person may store or cause the storage of hazardous waste in a manner which causes environmental pollution.

(am) No person may:

secs. 144.74(2) Stats. (Penalties),[4] and 165.87 Stats. (Law enforcement training fund), and injunctive relief.

The issue confronting the lower courts was whether trustees Zenner and Matyas were personally liable for violating Wisconsin's Hazardous Waste Act. The circuit court concluded that Zenner and Matyas, as trustees, may be held personally liable for willful, intentional or negligent violations of Wisconsin's Hazardous Waste Act. Zenner and Matyas appealed and the court of appeals concluded that trustees may be held personally liable only for knowing and intentional violations of the Hazardous Waste Act.

We conclude that Wisconsin courts lack jurisdiction in cases where, as here, trustees are sued personally for actions taken in their official capacities and within their scope of authority even where the trustees' actions violated Wisconsin's Hazardous Waste Act. Therefore, we dismiss the case against defendants Zenner and Matyas personally for lack of jurisdiction.

Prior to September, 1985, Better Brite, a Wisconsin corporation, owned and operated two electroplating and metals finishing facilities. One facility (chrome facility), located in DePere, Wisconsin, used chromic acid plating bath solutions. The other facility (zinc facility), also

---

1. Construct a hazardous waste facility unless the person complies with s. 144.44 (2) to (3).

2. Operate a hazardous waste facility without an interim or operating license issued under this subsection.

[4] **144.74 Penalties.**

. . ..

(2) Any person who violates ss. 144.60 to 144.74, or any rule promulgated under ss. 144.60 to 144.74, or any term or condition of a license issued under ss. 144.60 to 144.74, shall be subject to a forfeiture of not more than $25,000 for each day of violation. The time elapsed prior to the expiration of a compliance order shall not constitute a violation.

located in DePere, Wisconsin, used zinc/cyanide bath solutions. Because of the nature of its business, Better Brite had been dealing with environmental problems for a number of years. In early 1985, Better Brite ceased operating the chrome facility in DePere and moved it to Kaukauna, Wisconsin. We address only the operations at the zinc facility.

On September 5, 1985, Better Brite filed a voluntary petition for corporate reorganization under Ch. 11 of the Bankruptcy Code. On September 16, 1985, Zenner was appointed by the United States Bankruptcy Court for the Eastern District of Wisconsin to act as examiner with the powers of trustee for Better Brite. As the trustee for Better Brite, Zenner operated the zinc facility between September 16, 1985, and August 27, 1986.

During Zenner's trusteeship, and under his operation and direction, Better Brite installed and operated an industrial waste water treatment plant designed to treat the waste waters from Better Brite's zinc facility in an attempt to comply with environmental protection laws. The operation of the treatment plant commenced on May 11, 1986, and continued at least until July 14, 1986. During this treatment period, Better Brite, under the direction and control of Zenner, accumulated approximately twenty full or partially filled fifty-five gallon barrels of sludge wastes from the operation of the treatment plant. These twenty barrels comprise the hazardous waste which gives rise to this action.[5]

Though the treatment ceased on July 14, 1986, the accumulated waste remained. Thus, hazardous waste was stored at the zinc facility during Zenner's trustee-

---

[5]These barrels contained hazardous waste under secs. 144.43(2) and 144.62(2), Stats., 1985–86, and WIS. ADMIN. CODE Sec. NR 181.16(2) (Oct. 1985).

ship from May 11, 1986, through August 27, 1986, a period in excess of 90 days.

On August 27, 1986, the United States Bankruptcy Court for the Eastern District of Wisconsin converted the proceeding to a proceeding for dissolution of the corporation under Chapter 7 of the Bankruptcy Code and appointed Matyas to act as trustee for Better Brite.

Between August 27, 1986, and December 18, 1986, Matyas and Better Brite, under the direction and supervision of Matyas, as trustee for Better Brite, employed Zenner as a consultant to operate the facility and continued to store the hazardous waste previously generated.

Thus, hazardous waste was stored at the zinc facility during Matyas' trusteeship from the time of his appointment, on August 27, 1986, through December 18, 1986, a period in excess of 90 days.

On December 18, 1986, according to the circuit court, "Matyas, as trustee for Better Brite, entered into an agreement with Zenner and/or Zinc Shop," a corporation Zenner formed for the specific purpose of purchasing Better Brite's personal property, "for the sale of the building and all equipment and personal property" of Better Brite's zinc facility, "with the exception of the hazardous wastes accumulated at the site, and the lease of the real property underlying the building."

Under the terms of the agreement, Better Brite and Matyas, as trustee for Better Brite, continued to own the previously accumulated hazardous waste.

On March 19, 1987, Matyas filed an application for attorney's fees and a notice of his intent to abandon the residual assets of Better Brite.[6]

---

[6]Matyas' motion for abandonment resulted in *In Re Better-Brite Plating, Inc.,* 105 B.R. 912, 919 (Bankr. E.D. Wis. 1989), wherein the United States Bankruptcy Court for the Eastern District of Wisconsin, Dale E. Ihlenfeldt, Judge, approved Zen-

From the time the zinc facility's treatment plant began accumulating hazardous waste, on May 11, 1986, neither Better Brite nor Zenner or Matyas, as trustees for Better Brite, applied for or received a license to store hazardous waste from the DNR.

It is clear from the record that defendants Zenner and Matyas worked diligently with limited resources to remedy the environmental problems of Better Brite. In his opinion, Judge Ihlenfeldt noted that "So far as the evidence showed, Zenner did his best during the chapter 11 proceedings, albeit without success, to bring the zinc shop into compliance with the DNR's requirements." *In Re Better-Brite Plating, Inc.*, 105 B.R. at 916 n.1. And, referring to Matyas, Judge Ihlenfeldt stated, "The trustee had only a few hundred dollars, with all other assets subject to valid encumbrances," *Id.* at 915.

ner's request to abandon conditioned upon an order (1) giving the Environmental Protection Agency (EPA) and the DNR access to the two sites to carry out their statutory duties, and (2) giving to EPA, for response costs, and to DNR for actions taken pursuant to sec. 144.76(7)(a), Stats., administrative expense liens with priority over secured creditors to the proceeds of any sale of the property subsequent to decontamination. The DNR appealed, and on April 24, 1990, the U.S. District Court for the Eastern District of Wisconsin gave its decision and order affirming the order of the Bankruptcy Court. The DNR appealed to the U.S. Court of Appeals for the Seventh Circuit. Pending the appeal to the Seventh Circuit, the issue was rendered moot by the EPA's disposal of the hazardous wastes. The Seventh Circuit ordered the judgment of the district court vacated and remanded the case to the district court with directions to remand to the bankruptcy court for vacatur. On October 15, 1990, the U.S. Bankruptcy Court for the Eastern District of Wisconsin vacated its 1989 decision and order, 105 B.R. 912 (Bankr. E.D. Wis. 1989), as moot. 136 B.R. 527 (Bankr. E.D. Wis. 1990).

On September 13, 1988, the State of Wisconsin filed a Complaint against Better Brite, Zinc Shop, and Matyas and Zenner for personal liability under Wisconsin's Hazardous Waste Act, for storing hazardous waste in excess of 90 days without obtaining a license from the DNR.

On May 2, 1989, the state filed a motion for summary judgment with the circuit court. On December 7, 1989, the circuit court granted summary judgment against Better Brite, Zinc Shop, and Zenner and Matyas personally. The circuit court concluded that Zenner and Matyas, as trustees, may be held personally liable for willful, intentional or negligent violations of the States's laws and regulations occurring during their operation of Better Brite's zinc facility. Without specifying whether they willfully, intentionally or negligently violated the Hazardous Waste Act, the circuit court granted summary judgment against Zenner and Matyas.

The circuit court ordered Better Brite, Zinc Shop, and Zenner and Matyas personally, jointly and severally liable for the removal of the waste generated and accumulated by Better Brite and enjoined all operations of the electroplating facility owned by Zinc Shop until a bond or escrow account sufficient to ensure the environmentally safe storage, transport, treatment and/or disposal of the hazardous waste could be secured.

Zenner and Matyas appealed.[7] The court of appeals affirmed the circuit court's summary judgment against Zinc Shop, but reversed the summary judgments against Zenner and Matyas concluding that trustees are personally liable only for knowing and intentional violations of

[7]Neither Zenner nor Matyas complied with the circuit court's order and, on or about June 1, 1990, the EPA remediated the environmental contamination by disposing of the accumulated hazardous wastes.

Wisconsin's Hazardous Waste Act. The court of appeals remanded the cause for proceedings to determine whether Zenner and Matyas knowingly and intentionally violated Wisconsin's Hazardous Waste Act.

The State argues that 28 U.S.C. Sec. 959(b),[8] which provides that trustees shall act in accordance with state law, defines a trustee's scope of authority such that where a trustee violates state law, such trustee, *ipso facto,* has acted outside of his or her scope of authority and is therefore subject to state court jurisdiction in suits seeking personal liability. Next, the State argues that the Hazardous Waste Act does not conflict with federal law and thus is not pre-empted by federal law. Finally, the State argues that, if a conflict of law does exist, the Hazardous Waste Act, which provides strict liability for violations, is pre-empted only to the extent that the federal law requires a showing of negligent violation of state law.

The issue in this case is one of jurisdiction: whether Zenner and Matyas, by violating Wisconsin's Hazardous Waste Act, acted outside of their scope of authority and therefore are subject to Wisconsin State court jurisdic-

---

[8] **Section 959 Trustees and receivers suable; management; State laws.**

(a) Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

(b) A trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

tion in their personal capacities. Initially, we conclude that 28 U.S.C. Sec. 959 applies only to trustees in their official capacities and does not grant state court jurisdiction over trustees in their personal capacities where such trustees acted in their official capacities. Next, we conclude that violating state law does not mean, *ipso facto,* that the trustee acted outside of his or her scope of authority such that state courts obtain jurisdiction over the trustee in his or her personal capacity. We therefore do not reach the pre-emption issues, for, lacking jurisdiction, Wisconsin State courts are precluded from applying either federal or state law.

The law surrounding a trustee's personal liability is complex. However, there are several concepts which help frame the issue before us. First, where a trustee acts in excess of his or her authority, such trustee may be held personally liable for his or her actions. This long standing common law rule was explained in *Ziegler v. Pitney,* 139 F.2d 595, 596 (2d Cir. 1943):

> But receivers and trustees appointed under the Bankruptcy Act and authorized to conduct business on behalf of an estate in reorganization are by the weight of authority only liable as receivers or trustees, and not individually except in cases where they act outside their authority.

*See also Leonard v. Vrooman,* 383 F.2d 556, 560–61 (9th Cir. 1967), *cert. denied,* 390 U.S. 925 (1967); 1 COLLIER ON BANKRUPTCY ¶¶ 2.30 and 2.36 (14th ed. 1976); 2 COLLIER ON BANKRUPTCY ¶ 23.20 (14th ed. 1976); 4 COLLIER ON BANKRUPTCY ¶ 721.05 (15th ed. 1992); COWANS BANKRUPTCY LAW AND PRACTICE, Sec. 2.7 (1989).

Where a trustee acts outside of his or her scope of authority, such trustee may be sued in state court without leave of the appointing court. *Leonard v. Vrooman,*

383 F.2d at 560–61. *See also* 1 COLLIER ON BANKRUPTCY ¶¶ 2.30 and 2.36 (14th ed. 1976); 2 COLLIER ON BANKRUPTCY ¶ 23.20 (14th ed. 1976).

Second, a trustee may be personally liable for breaches of his or her fiduciary duty. The fundamental case in this area is *Mosser v. Darrow,* 341 U.S. 267 (1951), where the Supreme Court held that a trustee was personally liable for allowing key employees to profit from trading in securities of the debtor's subsidiaries. Lower courts are split, however, as to whether *Mosser* requires proof of willful and deliberate breach to impose personal liability or if proof of negligent breach is sufficient. For example, citing *Mosser,* the Ninth Circuit concludes: "A bankruptcy or reorganization trustee is a fiduciary of each creditor of the estate. . . . Although a trustee is not liable in any manner for mistakes in judgment where discretion is allowed, he is subject to personal liability for not only intentional but also negligent violations of duties imposed upon him by law." *In re Cochise College Park, Inc.,* 703 F.2d 1339, 1357 (9th Cir. 1983) (citations omitted). Conversely, the Seventh Circuit, also citing *Mosser,* concludes: "A trustee may be held personally liable only for a willful and deliberate violation of his fiduciary duties." *In Re Chicago Pacific Corp.,* 773 F.2d 909, 915 (7th Cir. 1985).[9]

The State relies on breach of fiduciary duty cases such as *Cochise* to substantiate their argument that a trustee's negligent violation of state law subjects the trustee to personal liability in state courts. The basis for this argument is misplaced. For, state courts traditionally do not have jurisdiction over breach of fiduciary cases. *Maguire v. Puente,* 466 N.Y.S.2d 934, 120 Misc.

[9]For a discussion of the split of authority, see COWANS BANKRUPTCY LAW AND PRACTICE, Sec. 2.7 (1989).

2d 871 (1983), specifically addressed whether a state has jurisdiction over a debtor in possession for breach of fiduciary duty and held that the state did not: "Although the defendant may be personally liable for his wrongful or unauthorized use of corporate funds, that liability should take the form of a surcharge imposed *by the bankruptcy court.*" *Id.* at 937 (emphasis added). The court also concluded that 28 U.S.C. Sec. 959(a), discussed *infra,* which grants state courts jurisdiction over trustees in their official capacities, "would have no apparent application to the breach of fiduciary duties in the administration of a bankruptcy estate." *Id.* at 938. Moreover, we can find no case where a breach of fiduciary suit was brought against a bankruptcy trustee in state court.

Third, under 18 U.S.C. Sec. 1911, a trustee may be held criminally liable in federal court and subject to fines and imprisonment where such trustee willfully violates state law.[10]

The State's interpretation of 28 U.S.C. Sec. 959—that it defines a trustee's scope of authority such that a violation of state law means, *ipso facto,* that the trustee acted outside of his or her authority and therefore is subject to state court jurisdiction in a personal capacity—would conflict with section 959's historical purpose, its long standing interpretation, and its structure.

---

[10] **18 U.S.C. Sec. 1911. Receiver mismanaging property.**

Whoever, being a receiver, trustee, or manager in possession of any property in any cause pending in any court of the United States, willfully fails to manage and operate such property according to the requirements of the valid laws of the State in which such property shall be situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof, shall be fined not more than $3,000 or imprisoned not more than one year, or both.

We initially observe that 28 U.S.C. Sec. 959 and 18 U.S.C. Sec. 1911, the criminal liability statute, are related. Both were created on March 3, 1911 by Congress. *See* ch. 231 Secs. 65, 66, 36 Stats. 1104–05.[11] Sections 65 and 66 were codified at 28 U.S.C. Secs. 124 and 125 respectively in 1940. On June 25, 1948, Congress recreated and renumbered sections 65 and 66 creating section 959 and section 1911. *See* ch. 645 Sec. 1911, 62 Stats. 792, and ch. 646 Sec. 959, 62 Stats. 926–27. They were codified at 28 U.S.C. Sec. 959 and 18 U.S.C. Sec. 1911. *Supra,* notes 8 and 10.

█

It is repeatedly and consistently recognized that the purpose of section 959 and its predecessor statutes is to act as an exception to the *Barton v. Barbour,* 104 U.S. 126 (1881), doctrine which required one bringing a suit against a receiver in his or her official capacity to obtain leave of the appointing court before a state had jurisdic-

---

[11] Act of Mar. 3 1911, ch. 231 Secs. 65, 66, 36 Stats. 1104–05 (codified at 28 U.S.C. Secs. 124, 125 (1940)).

. . ..

Section 65. Whenever in any cause pending in any court of the United States there shall be a receiver or manager in possession of any property, such receiver or manager shall manage and operate such property according to the requirements of the valid laws of the State in which such property shall be situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof. Any receiver or manager who shall willfully violate any provision of this section shall be fined not more than three thousand dollars, or imprisoned not more than one year, or both.

Section 66. Every receiver or manager of any property appointed by any court of the United States may be sued in respect of any act or transaction of his in carrying on the business connected with such property, without the previous leave of the court in which such receiver or manager was appointed; but such suit shall be subject to the general equity jurisdiction of the court in which such manager or receiver was appointed so far as the same may be necessary to the ends of justice.

tion over such trustee: "It is a general rule that before a suit is brought against a receiver leave of the court by which he was appointed must be obtained." *Id.* at 128. *Vass v. Conron Bros. Co.,* 59 F.2d 969, 970 (2d Cir. 1932), applied the *Barton* doctrine to trustees in bankruptcy.

Citing *Barton v. Barbour,* the United States Bankruptcy Court for Idaho summarized:

> The trustee in bankruptcy is an officer of the court appointing him, and courts other than the appointing court have no jurisdiction to entertain suits against the trustee, without leave from that appointing court, for acts done in his official capacity and within his authority as an officer of the court.
>
> A limited exception to this rule exists by way of 28 U.S.C. § 959 which allows for suit against trustees, receivers, or managers of any property, including debtors-in-possession, without leave of the court appointing them, with respect to any of their acts or transactions "in carrying on business connected with such property."

*Matter of Campbell,* 13 B.R. 974, 976 (Bankr. D. Idaho 1981). *See also In re Baptist Medical Center of New York,* 80 B.R. 637, 643 (Bankr. E.D. N.Y. 1987); *In Re Beck Industries, Inc.,* 725 F.2d 880, 888 (2d Cir. 1984); *Vass,* 59 F.2d at 970.

The purpose of the section 959 exception was not to change the nature of a trustee's liability from official to personal. Rather, section 959 and its predecessor statutes simply allowed for state court jurisdiction over certain official capacity liability cases which, under the *Barton* doctrine, the states did not previously have.

Given such purpose, courts interpreting section 959 and its predecessor statutes have specifically and repeat-

edly concluded that such statutes apply only to trustees in their official capacities. In *Vass v. Conron,* the Second Circuit affirmed a bankruptcy court's rule which enjoined the prosecution of an action against a trustee in state court in his official capacity. The court concluded that 28 U.S.C. 125, *supra,* note 11, the predecessor statute to 28 U.S.C. 959, applied to trustees in their official capacities: "Upon both grounds we think that in bankruptcy at least an action against a receiver *as such* may be enjoined, unless within the exception of section 125 of title 28, U.S. Code." *Vass,* 59 F.2d at 970 (emphasis added).

In *McNulta v. Lochridge,* 141 U.S. 327 (1891), the Supreme Court held that a receiver could be sued in his official capacity for actions the preceding receiver took with respect to the property in trust. Addressing the Act of March 3, 1887, ch. 373, § 3, 24 Stat. 552, 554,[12] the predecessor statute to 28 U.S.C. Sec. 125 and 28 U.S.C. Sec. 959, the Court stated: "Actions against the receiver are in law actions against the receivership, or the funds in the hands of the receiver, and his contracts, misfeasances, negligences and liabilities are official and not personal, and judgments against him as receiver are payable only from the funds in his hands." *McNulta,* 141 U.S. at 332.

---

[12] Act of Mar. 3, 1887, ch., 373 Sec. 3, 24 Stat. 552, 554.

. . ..

Section 3. That every receiver or manager of any property appointed by any court of the United States may be sued in respect of any act or transaction of his in carrying on the business connected with such property, without the previous leave of the court in which such receiver or manager was appointed; but such suit shall be subject to the general equity jurisdiction of the court in which such receiver or manager was appointed, so far as the same shall be necessary to the ends of justice.

In *Reading Co. v. Brown,* 391 U.S. 471 (1968), a claim priority case, the Supreme Court, referring to the above quoted *McNulta* language, stated: "This statement of course means only that torts of a receiver are in principle compensable *out of the assets of the estate in receivership* and, again, does not indicate whether such claims shall be paid prior to, equally with, or after other claims *against the receivership." Id.* at 478 n.7 (emphasis added). The Court specifically declined to address whether an action against the receiver personally would ever be available. *Id.*

Each of these cases interpreted section 959 and its predecessor statutes as applying only to suits brought against a trustee or receiver in his or her official capacity as a trustee or receiver. In fact, no court that we can find has ever interpreted section 959 as applying to or creating personal liability.

Therefore, given section 959's universally recognized purpose as well as its consistent interpretation, it is clear that the section did not grant state's jurisdiction over trustees in their personal capacities. Rather, section 959(a) granted state courts jurisdiction over trustees in their official capacities where the trustee's acts or transactions were with respect to "carrying on business" connected to the property in trust.

Where a trustee's acts do not constitute "carrying on business" connected to the property in trust, such trustee may be sued in state court only in his or her official capacity and only with leave of the appointing court. Discussing section 959(a), the United States Bankruptcy Court for the Eastern District of New York explained:

> If it is found that a putative suitor's case does not fit within the statutory exception—i.e. the trustee's acts

did not constitute "carrying on business"—his suit is not barred from adjudication by the non-appointing forum forever. The suitor simply must apply for leave from the appointing forum.

*In re Baptist Medical Center of New York,* 80 B.R. at 643 (footnote omitted). *See also Matter of Campbell,* 13 B.R. at 976.

Thus, it is in the context of section 959(a), which applies only to trustees in their official capacities, that we consider section 959(b).

■

Structurally, the only logical reading of section 959(b) is that it provides the basis for suits against trustees brought under section 959(a). Thus, where a trustee violates state law while performing acts that constitute "carrying on business" connected with the property in trust, such trustee may be sued in his or her official capacity in state court without leave of the appointing court. And, where the trustee violates state law performing acts that do not constitute "carrying on business" connected with the property in trust, such trustee may be sued in his or her official capacity in state court only if leave of the appointing court is granted.

To conclude that section 959(b) defines a trustee's scope of authority would render section 959(a) nugatory. For, if violation of state law meant that the trustee acted outside his or her scope of authority and was thus personally liable in state court, then section 959(a) would not apply because, as shown above, section 959(a) grants states jurisdiction only over trustees in their official capacity. Thus, under section 959(a), the state would not have jurisdiction over the trustee in his or her official capacity for a violation of state law. If that were the case, however, section 959(a) would be meaningless because, but for state law violations, there are no grounds upon

382

which a trustee could be sued under section 959(a).[13]

To summarize, section 959 applies only to trustees in their official capacities. Section 959(a) establishes the jurisdiction of state courts over trustees in their official capacities. Section 959(a) grants states jurisdiction over trustees in their official capacities where the trustees' acts constitute "carrying on business" connected with the property in trust. Where a trustee's actions do not constitute "carrying on business" connected with the property in trust, leave of the appointing court must be obtained before a suit can be brought in state court against the trustee in his or her official capacity.[14]

---

[13]One could not bring a breach of fiduciary duty suit against a trustee personally in state court under section 959 because section 959 applies only where official liability is sought. And, as discussed above, we find no case where a state court has exercised jurisdiction over a breach of fiduciary case, and *Puente,* the only case addressing this issue, held that the state court did not have jurisdiction over a debtor in possession personally in a breach of fiduciary duty case and concluded that section 959(a) "would have no apparent application" to such fiduciary duty cases. *Puente,* 466 N.Y.S.2d at 938.

[14]Exactly what constitutes "carrying on business" is not well settled. *See* 4 COLLIER ON BANKRUPTCY ¶ 721.05 (1992); *In Re Wall Tube & Metal Products Co.,* 831 F.2d 118, 122 (6th Cir. 1987) ("that the trustee in this case is liquidating the estate rather than reorganizing it is inconsequential"); *Matter of Borne Chemical Co., Inc.,* 54 B.R. 126, 135 (Bankr. D. New Jersey 1984) ("it appears that § 959(b) is applicable only where the property is being managed or operated for the purpose of continuing operations"); *Matter of Campbell,* 13 B.R. at 976 ("Merely collecting, taking steps to preserve, and/or holding assets, as well as other aspects of administering and liquidating the estate, do not constitute 'carrying on business' as that term has been judicially interpreted.") (citations omitted).

We note, however, that the issue of whether a trustee is

■ Section 959(b) establishes the basis for suits to be brought against trustees in their official capacities under section 959(a). Where a trustee violates state law when "carrying on business" connected to the property in trust, such trustee may be sued in state court in his or her official capacity without leave of the appointing court. Where a trustee violates state law but his or her violative acts do not constitute "carrying on business" connected with the property in trust, leave of the appointing court must be obtained before the state court acquires jurisdiction.

■ In this case, it is clear from the record that Zenner and Matyas were acting in their official capacities. The circuit found repeatedly that at every relevant time period, Zenner and Matyas were acting in their official capacities, as trustees, when they violated state law. Relevant "Findings of Fact" paragraphs of the circuit court opinion state:

> . . ..
> 17. Neither Better Brite nor Zenner, *as examiner/trustee for Better Brite,* had the hazardous waste generated by Better Brite removed from the site of generation before August 9, 1986.
> 18. Between August 9, 1986 and August 27, 1986, Better Brite and Zenner, *as examiner/trustee for Better Brite,* continued to store the accumulated

---

"carrying on business" under section 959 is a different issue than whether a trustee is acting in his or her official capacity or within his or her scope of authority. That a trustee acted in an official capacity is the condition precedent to the applicability of section 959 to such trustee. We merely conclude today that violating state law does not, *ipso facto,* mean that a trustee acted outside his or her scope of authority.

hazardous wastes identified in paragraph thirteen above.

. . ..

20. Between August 27, 1986 and December 18, 1986, Matyas and Better Brite, under the direction and supervision of Matyas, *as trustee for Better Brite,* employed Zenner as a consultant to operate the facility and continued to store the hazardous wastes previously generated by Better Brite at the site of generation.

. . ..

23. Under the terms of the agreement [entered into on December 18, 1986, which sold all non-hazardous waste contaminated personal property to Zinc Shop and Zenner], Matyas, *as trustee for Better Brite,* and Better Brite continued to own the previously accumulated hazardous wastes.

In addition, that Zenner and Matyas acted within their scope of authority is equally clear. The Bankruptcy Court, in its "Findings of Fact" section stated:

. . ..

2. (k) Zenner was appointed examiner with authority to manage and operate the debtor's plants and business in the ordinary course of business for a few days . . ..

. . ..

3. (b) Zenner was authorized to continue the operation of the business . . ..

. . ..

14. On application of the trustee, an order was entered on September 8, 1986 granting [Matyas] authority to continue in this manner for a limited period of time after his appointment but no longer than through September 11, 1986 . . ..

15. [Matyas] and the bank continued with their discussions and efforts to arrange a sale following the September 8, 1986 order. . . . Arranging a sale to Zenner took longer than expected, and the anticipated sale was conditioned upon the continued operation of the business, but no further order was sought or obtained from the court authorizing operation of the business to continue after September 11, 1986.

Though Matyas continued operating the business after the court's order expired, it is clear that Matyas was merely attempting to accomplish the goals of the initial order, that is, the sale of the property. Moreover, the resulting sale on December 18, 1986, was approved by the bankruptcy court after Matyas notified the creditors of his intent to sell the personal property of the estate and after a hearing was held with objections heard from the State of Wisconsin. It would be unreasonable to conclude that, though the sale was approved by the bankruptcy court, Matyas' actions in arranging the sale were unauthorized.

The defendants argue that holding trustees personally liable in situations such as this may well cause potential trustees to decline to operate bankrupt businesses that have environmental problems. The court of appeals noted the "potential devastating impact" that such a holding would have on the pool of persons willing to serve as trustees. *State v. Better Brite,* 160 Wis. 2d at 823. We find such public policy considerations compelling. Matters involving the complex legal area of environmental and bankruptcy law depend on the involvement of skilled trustees.

■

In conclusion, where trustees act outside of their official capacities and scope of authority they may be sued personally in state court. We do not interpret sec-

tion 959(b) as defining a trustee's scope of authority such that a violation of state law automatically means that the trustee acted outside his or her scope of authority and therefore is subject to state court jurisdiction for suits seeking personal liability. We conclude that Zenner and Matyas were acting within their official capacities and within their scope of authority.

We therefore modify the court of appeals opinion by directing that the action against Zenner and Matyas in their personal capacities be dismissed rather than remanded to the circuit court for a determination of whether their acts were knowing and intentional.

*By the Court.*—The decision of the court of appeals is modified and, as modified, affirmed and the matter is remanded to the circuit court with directions to dismiss the action against defendants Zenner and Matyas personally and for further proceedings not inconsistent with this opinion.

SHIRLEY S. ABRAHAMSON, J. (*dissenting*). In this action, the State of Wisconsin seeks civil forfeitures from David J. Matyas and John E. Zenner, two bankruptcy trustees who allegedly violated Wisconsin's Hazardous Waste Management Act while operating a bankrupt Wisconsin corporation in DePere, Wisconsin. If Matyas and Zenner had operated a corporation that was not bankrupt when they violated the Wisconsin statute, a Wisconsin court would have held them strictly and personally liable for the violation of sec. 144.64, Stats. 1985–86.

The majority concludes that because Matyas and Zenner were bankruptcy trustees at the time of their violations and were not acting outside the scope of their authority, Wisconsin courts do not have jurisdiction

over this matter. I disagree. The majority opinion has reserved more extensive exclusive jurisdiction to the bankruptcy courts than have the federal statutes.

I conclude that the state courts have subject matter jurisdiction over claims made against trustees personally, as in this case.[1] Section 959(a) (28 U.S.C.) expands state court jurisdiction to allow a trustee to be sued in his or her representative capacity if the action arises out of an act or transaction in carrying on the bankrupt business. Section 959(a) has not eliminated or narrowed the state court's jurisdiction to determine the personal liability of a bankruptcy trustee alleged to have acted outside the scope of his or her authority.[2]

Whether the state court holds the trustees personally liable depends on the resolution of several issues: whether the trustees acted outside the scope of their authority in a manner rendering them personally liable (and the standards for making this determination when the trustees are charged with violating state law),[3] to

[1] Wisconsin statutes clearly grant the state courts jurisdiction to decide cases under the Wisconsin Hazardous Waste Management Act. Section 144.98, Wis. Stats., states:

> The circuit court for Dane County or for any other county where a violation occurred in whole or in part has jurisdiction to enforce this chapter . . . by injunctional and other relief appropriate for enforcement.

[2] See, e.g., *Vass v. Conron Bros. Co.*, 59 F.2d 969 (2nd Cir. 1932); *In re Kalb & Berger Mfg. Co.*, 165 F. 895 (2nd Cir. 1908). See also E. Allan Tiller, *Personal Liability of Trustees and Receivers in Bankruptcy*, 53 Am. Bankr. L.J. 75, 83–88 (1979).

[3] To reach its result that Wisconsin courts do not possess jurisdiction over this action, the majority summarily concludes that the bankruptcy trustees did not act outside their scope of authority even though the trustees violated Wisconsin law. The majority notes only that the trustees acted "to accomplish the

what extent, if any, federal law immunizes the trustees from personal liability for violations of state law, and whether federal law preempts the operation of state law. These are, I believe, the issues which the majority must decide.

For the reasons set forth, I would not hold that the circuit court has no jurisdiction. Accordingly, I dissent.

goals of the initial order" of the bankruptcy court, which apparently included managing and operating the business and ultimately selling the property. Majority opinion at 386.

The majority does not support its conclusion nor distinguish the facts of this case from other cases in which a trustee would exceed the scope of his or her authority by violating state law. The broad grant of authority to the trustee cited by the majority does not justify the trustee's violation of state law. A bankruptcy court does not possess unlimited power to authorize a bankruptcy trustee to violate state law. *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection,* 474 U.S. 494 (1986); *Gillis v. California,* 293 U.S. 62 (1934).