TENNSCO CORPORATION, Plaintiff,

v.

ESTEY METAL PRODUCTS, INC.; Crater Associates; F. Philip Tucker, Sr.; F. Philip Tucker, Jr.; Joan T. Cox; Peter W. Rodino III, Defendants.

Civil No. 96–1284 (GEB).

United States District Court,
D. New Jersey.

Sept. 17, 1996.

Gail Hokanson Allyn, Pitney, Hardin, Kipp & Szuch, Morristown, NJ, for Tennsco Corporation.

Gregory Joseph Coffey, Schenck, Price, Smith & King, Morristown, NJ, for Crater Associates, F. Philip Tucker, Sr., F. Philip Tucker, Jr., Joan T. Cox.

Christopher J. Carey, Tompkins, McGuire & Wachenfeld, Newark, NJ, for Peter W. Rodino, III.

## MEMORANDUM OPINION

BROWN, District Judge.

This matter comes before the Court on defendant Peter W. Rodino III's motion to dismiss for failure to state a claim upon which relief may be granted pursuant to FED.R.CIV.P. 12(b)(6). For the reasons set forth herein, the Court will grant defendant's motion.

## I. BACKGROUND

Defendant Peter W. Rodino III was appointed the Chapter 11 trustee in bankruptcy for Estey Metals (hereinafter "Estey") by the United States Bankruptcy Court, District of New Jersey. Plaintiff's Complaint ¶ 12. Plaintiff Tennsco Corporation (hereinafter "Tennsco") is the current owner of property located at 1457 Shafto Road, Tinton Falls, New Jersey (hereinafter "the property"), which consists of to two adjacent tax lots. *Id.* ¶ 13. Lot 1A, Block 120 was acquired by deed dated September 13, 1984 from Rodino, as trustee in bankruptcy for Estey. *Id.* ¶ 14. Lot 2A, Block 120 was acquired by deed dated September 13, 1984 from defendant Crater Associates (hereinafter "Crater"), which had leased the lot to Estey. *Id.* ¶ 16.

Prior to Tennsco's acquisition of the property, Estey was in the business of manufacturing library bookshelves on the property.

In their manufacturing process, Estey used solvent based paints containing hazardous metals and solvents. As part of its operations, Estey discharged "dirty wash water" containing the hazardous metals and solvents into a pond located on the property, contaminating the pond and ground water. *Id.* ¶¶ 20–25. Estey continued its operations until the sale of the property in 1984. *Id.* ¶ 27.

On September 13, 1984, Estey submitted the Negative Declaration Affidavit of F. Philip Tucker, Jr. to the New Jersey Department of Environmental Protection (hereinafter "DEP"), stating that there were no areas of environmental concern on either parcel of the property. *Id.* ¶ 29. The DEP approved the Negative Declaration Affidavit for both parcels on September 14, 1984. *Id.* ¶ 30. Tennsco operated the property from September 14, 1984 through 1990. In 1990, Tennsco discovered the existence of hazardous metals and solvents in the pond and groundwater. The contaminants were identified as those used by Estey during the time period in which Estey owned and used Lot 1A and leased Lot 2A from Crater. *Id.* ¶¶ 33–35. By letter dated May 27, the DEP rescinded its Negative Declaration Approval, requiring that Estey and Crater submit a Remedial Action Workplan. *Id.* ¶¶ 37–38. Crater has failed to submit a Remedial Action Workplan to the DEP.[1] *Id.* ¶ 39.

On March 19, 1996, Tennsco filed a complaint against Estey, Crater, F. Philip Tucker, Sr., F. Philip Tucker, Jr., Joan T. Cox and Peter W. Rodino III, alleging that Tennsco has been unable to sell the property, has incurred costs and will incur future costs as a result of the contamination. *Id.* ¶¶ 40–41. Plaintiff's complaint seeks that defendants be held liable to Tennsco: under the Comprehensive Environmental Response, Compensation and Liability Act (hereinafter "CERCLA"), 42 U.S.C. § 9601 *et seq* (West 1995); under the New Jersey Spill Compensation and Control Act (hereinafter "Spill Act"), N.J.STAT.ANN. § 58:10–23.11 *et seq* (West 1992); for conducting an abnormally dangerous activity on the property; for negligence; for a public or private nuisance; for breach of contract; and for misrepresentation.

## II. DISCUSSION

### A. STANDARD FOR A MOTION TO DISMISS

██ A motion to dismiss pursuant to FED.R.CIV.P. 12(b)(6) may be granted only if, accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief. *Bartholomew v. Fischl,* 782 F.2d 1148, 1152 (3d Cir.1986); *Angelastro v. Prudential–Bache Sec., Inc.,* 764 F.2d 939, 944 (3d Cir.), *cert. denied,* 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985). The Court may not dismiss a complaint unless plaintiff can prove no set of facts which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Angelastro,* 764 F.2d at 944. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). In setting forth a valid claim, a party is required only to plead "a short plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a).

██ Research has disclosed no cases holding a bankruptcy trustee personally liable to non-parties to the bankruptcy proceeding for the debtor's environmental problems. While a bankruptcy trustee may be held personally liability for a breach of fiduciary duties to the estate,[2] when dealing with trustee liability to

---

1. Plaintiff's complaint does not indicate whether or not Estey submitted a Remedial Action Workplan.

2. There is a difference of opinion as to the standard for such liability. Some courts have held a bankruptcy trustee personally liable "only for a willful and deliberate violation of his fiduciary duties," while others have held that a trustee is personally liable for negligently performing his fiduciary duties. *See Hutchinson v. McGee,* 5 F.3d 750, 752–53 (4th Cir.1993); *In re Sturm,* 121 B.R. 443, 447 (Bankr.E.D.Pa.1990). The only relevant Third Circuit precedents were decided over fifty years ago, in which the court alluded to the fact that a trustee would be held personally liable to parties to the bankruptcy proceeding for negligently performing his fiduciary duties. *See In re Prindible,* 115 F.2d 21 (3d Cir.1940); *In re Lambertville Rubber Co.,* 111 F.2d 45 (3d Cir.1940).

non-parties, we must recognize that there is a strong public policy in protecting bankruptcy trustees, since the imposition of personal liability on bankruptcy trustees for unintentional tortious acts to non-parties to the bankruptcy proceeding would create a significant disincentive to trustee service.[3] *See In re Markos Gurnee Partnership,* 182 B.R. 211, 218 (Bankr.N.D.Ill.1995), *aff'd sub nom., State of Illinois Dep't of Revenue v. Schechter,* 195 B.R. 380 (N.D.Ill.1996); *State v. Better Brite Plating, Inc.,* 483 N.W.2d 574, 583 (Wis.1992) (noting the "potential devastating impact" of holding bankruptcy trustees personally liable to third-parties for the debtor's environmental problems).

■■■ It is clear that bankruptcy trustees must comply with environmental laws, *see Midlantic Nat'l Bank v. New Jersey Dept. of Envtl. Protection,* 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986), and that both CERCLA and New Jersey Spill Act liability are to be applied liberally. *See Bowen Eng'g v. Estate of Reeve,* 799 F.Supp. 467, 475 (D.N.J.1992), *aff'd,* 19 F.3d 642 (3d Cir.1994); *State Dept. of Envtl. Protection v. Ventron Corp.,* 94 N.J. 473, 502, 468 A.2d 150 (1983). However, while environmental liability has been applied to non-bankruptcy trustees in other contexts, *see, e.g., City of Phoenix v. Garbage Servs. Co.,* 816 F.Supp. 564 (D.Ariz. 1993) (holding a testamentary trustee with legal title to a property liable as an owner under CERCLA), such liability should not be imposed upon a bankruptcy trustee as a result of his administering the estate.

A trustee in bankruptcy is a fiduciary of the estate, *In re Delta Petroleum,* 193 B.R. 99, 110 (Bankr.D. Puerto Rico 1996), and has a duty to manage its funds for the benefit of the creditors. *In re Fidelity Am. Fin. Corp.,* 43 B.R. 74, 77 (Bankr.E.D.Pa.1984); *In re The Washington Group, Inc.,* 476 F.Supp. 246, 250 (M.D.N.C.1979), *aff'd,* 636 F.2d 1213 (1980), *cert. denied,* 452 U.S. 940, 101 S.Ct. 3084, 69 L.Ed.2d 954 (1981). Bankruptcy trustees differ from other types of trustees, in that bankruptcy trustees are quasi-public officials, and are appointed by the court for the estate. *See In re Beck Indus., Inc.,* 725 F.2d 880, 888 (2d Cir.1984) (noting that a bankruptcy trustee is an officer of the court); *United States v. Seville Indus. Machinery Corp.,* 696 F.Supp. 986, 992 (D.N.J.1988) ("A bankruptcy trustee is an agent and officer of the bankruptcy court."). Therefore, because of this special role, personal liability should not be imposed upon a bankruptcy trustee in these circumstances.

Plaintiff's complaint alleges that defendant Rodino, as the trustee in bankruptcy, should be held personally liable for remediation costs and for the property's lost value. However, the two relevant Third Circuit decisions, *Prindible* and *Lambertville,* dealt with situations in which the creditors of a bankruptcy estate were suing the trustee for a breach of his fiduciary duties to the estate. In the matter at hand, Tennsco was not a creditor of the estate, but instead, a non-party to the bankruptcy proceeding. Moreover, no breach of fiduciary duty by Rodino occurred. The sale of the property by Rodino took place as part of the bankruptcy proceedings, with Rodino acting within the scope of his authority as the bankruptcy trustee for Estey. Therefore, since no breach of fiduciary duty occurred, the negligence standard alluded to in *Prindible* and *Lambertville* is irrelevant to the issue at hand. Furthermore, as indicated *supra,* there is a strong public policy against holding bankruptcy trustees personally liable, absent a breach of their fiduciary duties. If bankruptcy trustees were held personally liable for the environmental torts of the debtor, there would be a dearth of capable bankruptcy trustees, since prudent, responsible persons would be unwilling to serve. Since defendant Rodino was acting in the scope of his authority as the trustee in bankruptcy for Estey, and no breach of fiduciary duties was alleged by Tennsco, Rodino cannot be held personally liable for selling the property to Tennsco. Therefore, even accepting all of plaintiff's allegations as true, and viewing them in the light most favorable to plaintiff,

---

**3.** This is not to say that a bankruptcy trustee could not be held liable to non-parties to the bankruptcy proceeding. However, in the case at bar, plaintiff's complaint fails to allege any facts which would create such a situation.

plaintiff's claims as against Rodino personally must be dismissed for failure to state a claim upon which relief can be granted.

## III. CONCLUSION

For the foregoing reasons, the Court will grant defendant Peter W. Rodino III's motion to dismiss plaintiff's claims as to him, pursuant to FED.R.CIV.P. 12(b)(6).