**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| TIMOTHY L. BLIXSETH,<br>*Appellant*,<br><br>v.<br><br>YELLOWSTONE MOUNTAIN CLUB,<br>LLC; AD HOC GROUP OF CLASS B<br>UNIT HOLDERS; CIP SUNRISE RIDGE<br>OWNER LLC; CIP YELLOWSTONE<br>LENDING LLC; CROSSHARBOR<br>CAPITAL PARTNERS, LLC; MARC S.<br>KIRSCHNER; CREDIT SUISSE AG,<br>CAYMAN ISLANDS BRANCH;<br>YELLOWSTONE CLUB LIQUIDATING<br>TRUST,<br><br>*Appellees*. | No. 12-35986<br><br>D.C. No.<br>2:11-cv-00073-<br>SEH<br><br><br>OPINION |

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted
November 5, 2013—Seattle, Washington

Filed February 18, 2014

Before:  Alex Kozinski, Chief Judge, Richard A. Paez
and Marsha S. Berzon, Circuit Judges.

Per Curiam Opinion

## SUMMARY[*]

### Bankruptcy

The panel affirmed the district court's affirmance of the bankruptcy court's denial of a recusal motion.

The panel held that the bankruptcy court did not abuse its discretion in denying the recusal motion because a reasonable person with knowledge of all the facts would not have concluded that the bankruptcy judge's impartiality might reasonably be questioned.  The panel held that there was no merit to appellant's claims of alleged ex parte communications, rulings made by the judge that purportedly denied appellant due process, and supposedly biased statements made by the judge during various proceedings. The panel stated that appellant's claims were "a transparent attempt to wriggle out of an unfavorable decision by smearing the reputation of the judge who made it."

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Michael James Flynn, Sr., Rancho Santa Fe, CA (argued), Phillip H. Stillman, Stillman & Associates, Miami Beach, FL, Patrick T. Fox, Doubek Pyfer & Fox, LLP, Helena, MT, Christopher J. Conant, Conant Law LLC, Denver, CO and Michael J. Ferrigno, Law Office of Michael Ferrigno, PLLC, Meridian, ID, for Appellant.

James A. Patten, Patten, Peterman, Bekkedahl & Green, PLLC, Billings, MT (argued), Michael R. Lastowski, Duane Morris LLP, Wilmington, DE, Robert R. Bell, Mullin, Hoard & Brown, Amarillo, TX and Benjamin P. Hursh, Crowley Fleck, PLLP, Missoula, MT for Appellees.

**OPINION**

PER CURIAM:

Timothy Blixseth sounds the clarion call of many a disappointed litigant: "It's not fair!" He insists that the judge who presided over the administration of the Yellowstone Mountain Club ski resort's bankruptcy was biased against him and should have recused himself. The bankruptcy judge denied the recusal motion and the district court affirmed. Blixseth has now filed a blunderbuss appeal.

**I**

Blixseth and his ex-wife founded Yellowstone Mountain Club, a ski and golf resort built on the twin pillars of luxury and exclusivity. A haven for the ultra-wealthy, Yellowstone offers "Private Powder": over 2,200 acres of skiable terrain

available only to club members and their invited guests. *See* Yellowstone Club, *Ski*, http://goo.gl/tfWQ5n. It was at one point the only private ski area in the world. *See In re BLX Group, Inc.*, 419 B.R. 457, 460 (Bankr. D. Mont. 2009). In 2005, Yellowstone borrowed $342 million. *Id.* at 461. The same day, over $200 million of this money was "disbursed by Blixseth to various personal accounts and payoffs benefitting Blixseth and [his ex-wife] personally." *Id.* Unsurprisingly, Yellowstone eventually filed for bankruptcy.

Blixseth objected to the proposed bankruptcy settlement plan (the Plan), arguing that his ex-wife and others were the cause of Yellowstone's financial problems. *See In re Yellowstone Mountain Club, LLC*, 436 B.R. 598, 641–44 (Bankr. D. Mont. 2010), *amended in part by In re Yellowstone Mountain Club, LLC*, No. 08-61570-11, 2010 WL 3504210 (Bankr. D. Mont. Sept. 7, 2010). The bankruptcy court disagreed. It found that Blixseth had misappropriated Yellowstone's cash and property for his personal use and that his fraudulent intent in doing so "could not be more clear." *Id.* at 657–64. The bankruptcy court entered a $40 million judgment against Blixseth—the amount the court determined was necessary to pay off certain classes of creditors. *Id.* at 679. The district court reversed on narrow grounds, directing the bankruptcy court to give proper notice to the affected parties and further refine an exculpation clause in the Plan. *See generally Blixseth* v. *Yellowstone Mountain Club, LLC*, No. CV-09-47, 2010 WL 4371368 (D. Mont. Nov. 2, 2010).[1]

---

[1] On remand, the bankruptcy court explained that, in its view, notice was proper and the exculpation clauses were supported by Ninth Circuit precedent. *In re Yellowstone Mountain Club, LLC*, 460 B.R. 254, 258–63, 266–77 (Bankr. D. Mont. 2011). Blixseth again appealed, but the district

While the case was again before the bankruptcy court, Blixseth filed a motion alleging numerous incidents of judicial misconduct and urging that the bankruptcy judge recuse himself.  The bankruptcy judge denied the motion, and the district court affirmed, finding that "extraordinary consideration was accorded Blixseth and his position throughout the proceedings."

## II

We review the bankruptcy judge's denial of a recusal motion for abuse of discretion.  *See In re Marshall*, 721 F.3d 1032, 1039 (9th Cir. 2013).  Recusal is appropriate where "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Pesnell* v. *Arsenault*, 543 F.3d 1038, 1043 (9th Cir. 2008).  Actual bias isn't required; the appearance of impropriety can be a sufficient basis for judicial recusal. *See Liljeberg* v. *Health Servs. Acquisition Corp.*, 486 U.S. 847, 864–65 (1988); *Yagman* v. *Republic Ins.*, 987 F.2d 622, 626 (9th Cir. 1993).  We gauge appearance by considering how the conduct would be viewed by a reasonable person, not someone "'hypersensitive or unduly suspicious.'" *United States* v. *Holland*, 519 F.3d 909, 913 (9th Cir. 2008) (quoting *In re Mason*, 916 F.2d 384, 386 (7th Cir. 1990)).

Blixseth's accusations fall into three categories: (1) alleged ex parte communications; (2) rulings made by the

---

court held that Blixseth lacked appellate standing to challenge the bankruptcy court's ruling because he no longer claimed to be an unsecured creditor and thus had no interest in the Plan.  Memorandum & Order, No. 2:11-cv-00065, Dkt. # 121 (D. Mont. Mar. 6, 2013).  That decision is currently the subject of a separate appeal.

judge that purportedly denied Blixseth due process; and (3) supposedly biased statements made by the judge during various proceedings. We see no need to clutter the pages of the Federal Reporter with a discussion of each one of Blixseth's myriad and often duplicative claims. A few examples in each of the three categories more than suffice to give a sense of Blixseth's accusations.

## A.  The "Ex Parte" Communications

While ex parte communications are discouraged, *see, e.g.*, *United States* v. *Van Griffin*, 874 F.2d 634, 637 (9th Cir. 1989), they aren't always improper and don't necessarily call for recusal. *See Willenbring* v. *United States*, 306 F.2d 944, 946 (9th Cir. 1962); *see also Reed* v. *Rhodes*, 179 F.3d 453, 468–69 (6th Cir. 1999). Ex parte motions may be brought in emergencies, to preserve state secrets and in a variety of other contexts. The Federal Rules of Civil Procedure specifically recognize the legitimacy of ex parte contacts in certain circumstances. *See, e.g.*, Fed. R. Civ. P. 6(c). Ex parte contacts are improper where, given all the circumstances, they could cause a reasonable person to question that judge's impartiality. *See Pesnell*, 543 F.3d at 1043; *United States* v. *Wecht*, 484 F.3d 194, 214–15 (3d Cir. 2007).

We start with the incident that Blixseth claims most clearly demonstrates the judge's partiality: that the judge met with representatives of the debtor and bankruptcy bidders in Blixseth's absence. The meeting concerned an upcoming non-public auction of the debtor's assets. In a non-public bankruptcy auction, the debtor's assets are auctioned off to qualified bidders—parties who commit to making a certain minimum bid and provide collateral as a guarantee of that commitment. This is a procedure widely employed by

bankruptcy courts to maximize the value of estates. *See, e.g.*, *Peterson* v. *U.S. Bank Nat'l Ass'n*, 918 F. Supp. 2d 89, 98 (D. Mass. 2013); *In re Trident Water Works, Inc.*, No. 09-49166, 2010 WL 5167286, at *2 (Bankr. W.D. Wash. Aug. 27, 2010); *In re Farmland Indus., Inc.*, 376 B.R. 718, 730 (Bankr. W.D. Mo. 2007).

The debtor, Yellowstone, and the unsecured creditors were attempting to identify qualified bidders so they could conduct an auction. They invited the judge to one informal meeting in the hope that he could help them resolve differences about the proposed auction. Blixseth wasn't the debtor or an unsecured creditor and he never attempted to qualify as a bidder. The upcoming auction therefore did not affect his interests and he had no right to participate. An ex parte contact with a judicial officer is one where a party who has a right to be present is excluded. Because Blixseth had no right to be present, the meeting between the judge, the debtor, the unsecured creditors and potential qualified bidders wasn't ex parte as to him. *See In re Goodwin*, 194 B.R. 214, 222 (9th Cir. BAP 1996).

Blixseth argues that *any* meeting between the judge and the parties was improper because the judge hadn't yet ruled on Blixseth's liability. He suggests that, during the meeting, the judge and the parties must have discussed Blixseth's claim. But Blixseth provides no evidence that anything other than the upcoming auction was discussed at the meeting. A judge need not remove himself from all legitimate activity in administering a complex estate simply because he has motions pending. Blixseth presents nothing that would have required the judge to recuse himself.

Blixseth makes a variety of other claims about supposedly improper ex parte contacts. He points to an email from a senior bankruptcy judge to Yellowstone's counsel providing two case citations. But the senior judge didn't preside over the Yellowstone bankruptcy,[2] and Blixseth doesn't explain how the email shows bias on the part of the bankruptcy judge whose recusal he seeks.

Equally meritless is Blixseth's assertion that four emails sent by one of the bankruptcy judge's law clerks show improper bias. The emails discussed such innocuous details as the date for the filing of the bankruptcy petition, what paperwork was required before a cash collateral motion could be approved and the judge's intention to enter a generic order unless counsel wished to submit a proposed order. Ex parte communications with judicial staff concerning routine administrative matters do not raise any inference of bias. *See In re Kensington Int'l Ltd.*, 368 F.3d 289, 305 (3rd Cir. 2004). Blixseth's overwrought argument that these emails prove some sort of conspiracy against him is wholly unfounded.

Nor are we persuaded that a phone call between a law clerk assisting a different judge and the bankruptcy trustee in a related proceeding demonstrates that the bankruptcy judge is biased. Blixseth claims to have heard from a third party that, during the call, the clerk encouraged the trustee to

---

[2]   At oral argument, Yellowstone's counsel suggested that the senior judge's email was related to a mediation that occurred in 2009. Blixseth's counsel, Michael Flynn, responded that it was a "complete fabrication" to suggest that in 2009 the senior judge "was involved in a mediation in this case." Flynn's statements to this court are demonstrably inaccurate: The record shows that the senior judge acted as a mediator in this case in 2009. Counsel could have verified his assertion following oral argument, but he has not retracted his erroneous statement.

complete a settlement before Blixseth could back out. Even if this rumor were true, encouraging parties to finalize a settlement before one of them has a change of heart is not improper.

## B. Denial of Due Process

"[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality [recusal] motion." *Liteky* v. *United States*, 510 U.S. 540, 555 (1994). Recusal is only warranted if rulings are based on extrajudicial "knowledge that the [judge] ought not to possess" or "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.* at 550, 555.

We have already concluded that Blixseth's claims of ex parte contacts are baseless. His only other significant argument that the judge relied on extrajudicial sources is that the judge improperly took judicial notice of facts established in related proceedings. But such facts don't constitute "knowledge that the [judge] ought not to possess." *Id.* at 550. If Blixseth believed the judge erred in considering them, his remedy was to raise the issue on appeal.

Nor do any of Blixseth's claims of judicial antagonism hold water. For example, Blixseth complains that the judge ruled against him on three summary judgment motions (all filed on the same day) after the opposition filed an omnibus response, but before Blixseth filed a reply brief. Blixseth claims that, because the version of Fed. R. Civ. P. 56 in effect at the time provided that he "may file a reply within 14 days after the response is served," it was improper for the judge to rule before such a reply was filed. *See* Fed. R. Civ. P. 56 (2009). At most, this was another error that Blixseth was free

to raise on appeal.  It comes nowhere near showing that the judge had "such a high degree of favoritism or antagonism as to make fair judgement impossible." *Liteky*, 510 U.S. at 555. There is simply no evidence that the judge acted out of an improper or corrupt motive.

Blixseth fails to acknowledge that the judge made a number of significant rulings in his favor.  For example, Yellowstone argued that the damages against Blixseth should be $286.4 million, but the bankruptcy judge held Blixseth liable for only $40 million. *In re Yellowstone Mountain Club*, 436 B.R. at 679.  Such favorable rulings cut strongly against any inference that the judge was unable to "render fair judgment." *Liteky*, 510 U.S. at 551.

A judge isn't required to recuse himself even if he becomes "exceedingly ill disposed towards [a] defendant [] who has been shown to be a thoroughly reprehensible person." *Id.* at 550–51.  Here, not only is there no sign of antagonism requiring recusal, there's not even any evidence of a general negative disposition towards Blixseth.  The bankruptcy judge, in fact, showed remarkable restraint given Blixseth's scorched-earth litigation tactics.

## C.  "Biased" Statements

"[J]udicial remarks [made] during the course of a trial" require recusal only if "they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.* at 555.  Blixseth cherry-picks a handful of quotes out of an enormous record; none shows even a slight degree of antagonism.

According to Blixseth, the judge "sua sponte requested" that counsel in his ex-wife's bankruptcy proceeding "opine on the reputation of Mr. Blixseth's lead litigation counsel, Michael Flynn." This is, at best, a distortion of the record. The judge was asking counsel about points raised in his brief. One of those had to do with Flynn's reputation: Opposing counsel stated that he had previously accepted Flynn's factual representations because "at the time [he] was not aware of Mr. Flynn's reputation." The judge said "Then another statement that was made, I believe in your brief, is you make some reference to now you know Mr. Flynn's reputation. What is that? What did you mean by that?"

Asking counsel to explain statements in briefs doesn't give the appearance of partiality. One would expect a judge to seek clarification of statements impugning the reputation of one of the lawyers before him. Just as with his other claims, Blixseth makes extravagant accusations, but fails to back them up with even a shred of credible evidence.

*        *        *

Blixseth's claims are a transparent attempt to wriggle out of an unfavorable decision by smearing the reputation of the judge who made it. The bankruptcy court was correct in denying the recusal motion, as was the district court in affirming.

**AFFIRMED.**