**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN RE YELLOWSTONE MOUNTAIN
CLUB, LLC,

*Debtor,*

No. 14-35363

D.C. No.
2:13-cv-00032-SEH

TIMOTHY L. BLIXSETH,
*Plaintiff-Appellant,*

v.

STEPHEN R. BROWN;
GARLINGTON, LOHN &
ROBINSON, PLLP,
*Defendants-Appellees.*

OPINION

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted February 25, 2016
Pasadena, California

Filed November 28, 2016

Before: Alex Kozinski, Richard A. Paez
and Marsha S. Berzon, Circuit Judges.

Opinion by Judge Kozinski

## SUMMARY*

### Bankruptcy

The panel affirmed in part and vacated in part the district court's affirmance of (1) the bankruptcy court's denial of plaintiff's request for permission, pursuant to *Barton v. Barbour*, 104 U.S. 126 (1881), to sue a member of an Unsecured Creditors' Committee in district court, and (2) the bankruptcy court's dismissal of plaintiff's claims on the merits.

Under the *Barton* doctrine, plaintiffs must obtain authorization from the bankruptcy court before initiating an action in district court against certain officers appointed by the bankruptcy court for actions the officers have taken in their official capacities. The panel held that *Barton* applies to UCC members who are sued for acts performed in their official capacities. Any such suit must be brought in the bankruptcy court, or in another court only with the express permission of the bankruptcy court.

The panel held that claims alleging misconduct by the defendant prior to the bankruptcy proceedings could be brought without permission from the bankruptcy court. The panel held that the bankruptcy court erred in holding that these pre-petition claims were so intertwined with the defendant's actions as a member of the UCC that they could not be separated from the post-petition claims.

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

As to claims challenging defendant's conduct related to his actions after he was appointed UCC chair, the panel held that the bankruptcy court did not abuse its discretion in denying plaintiff's *Barton* motion to bring these post-petition claims in district court.

The panel held that the bankruptcy court did not exceed its Article I jurisdiction by adjudicating on the merits plaintiff's post-petition claims, which stemmed from the bankruptcy. The panel held that the bankruptcy court erred in dismissing post-petition claims on the ground of derivative judicial immunity for defendant's actions taken as UCC chair. The panel remanded for the bankruptcy court to consider whether defendant was entitled to derived judicial immunity because he acted within the scope of his authority, he candidly disclosed his proposed acts to the bankruptcy court, the debtor had notice of his proposed acts, and the bankruptcy court approved the proposed acts.

---

### COUNSEL

John C. Doubek (argued), Doubek Pyfer & Fox LLP, Helena, Montana; Michael J. Ferrigno, Law Office of Michael J. Ferrigno, Boise, Idaho; for Plaintiff-Appellant.

Dale R. Cockrell (argued) and Mikel L. Moore, Moore Cockrell Goicoechea & Axelberg P.C., Kalispell, Montana, for Defendants-Appellees.

## OPINION

KOZINSKI, Circuit Judge:

We consider whether, under *Barton* v. *Barbour*, 104 U.S. 126 (1881), a plaintiff must obtain a bankruptcy court's permission before suing a member of the Unsecured Creditors' Committee (UCC) in district court, and whether bankruptcy courts have authority to enter a final judgment on *Barton* claims.

## BACKGROUND

This is but the latest chapter in the long-running saga of the Yellowstone Mountain Club bankruptcy litigation. *See Blixseth* v. *Yellowstone Mountain Club, LLC*, 742 F.3d 1215 (9th Cir. 2014) (per curiam); *In re BLX Grp., Inc.*, 419 B.R. 457 (Bankr. D. Mont. 2009). In the late 1990s, Timothy Blixseth and his wife, Edra, developed the Yellowstone Mountain Club, an exclusive ski and golf resort in Montana that caters to the "ultra-wealthy." *Blixseth*, 742 F.3d at 1218; *see also In re BLX Grp.*, 419 B.R. at 460.

As part of his business-development efforts, Blixseth borrowed $375 million from Credit Suisse on behalf of the Yellowstone entities[1] but used some of the proceeds to pay off personal debts. *In re BLX Grp.*, 419 B.R. at 461. Blixseth alleges that he relied on the advice of his attorney, Stephen Brown, who assured him that his actions were lawful.

---

[1] These entities were Yellowstone Mountain Club, LLC, Yellowstone Development, LLC and Big Sky Ridge, LLC.

When shareholders of the Yellowstone entities caught wind of Blixseth's actions, they sued in Montana state court. On Brown's advice, Blixseth settled. Around the same time, Blixseth and Edra divorced. Represented by Brown, Blixseth divided his property pursuant to a marital settlement agreement (MSA) that gave the Yellowstone entities to Edra. *Id.*

In November 2008, Edra filed bankruptcy petitions on behalf of the Yellowstone entities. *Id.* at 462. A month later, the U.S. Trustee appointed nine individuals to serve as the UCC. One of the UCC members—the chairman, no less—was Blixseth's former counsel, Stephen Brown.

Blixseth suspected that Brown used confidential information to Blixseth's detriment in the bankruptcy proceedings. Accordingly, he sued Brown in district court. The district court held that it lacked jurisdiction because Blixseth hadn't first obtained the bankruptcy court's permission to sue, as required by *Barton*.

Under *Barton*, plaintiffs must obtain authorization from the bankruptcy court before "initiat[ing] an action in another forum" against certain officers appointed by the bankruptcy court for actions the officers have taken in their official capacities. *In re Crown Vantage, Inc.*, 421 F.3d 963, 970 (9th Cir. 2005). A district court is considered to be "another forum," requiring leave of the bankruptcy court before a lawsuit can be brought. *In re Kashani*, 190 B.R. 875, 885 (B.A.P. 9th Cir. 1995).

The district court recognized that *Barton* normally applies to suits against receivers and bankruptcy trustees but discerned a broader purpose: to "centralize bankruptcy

litigation" and "keep a watchful eye" on court-appointed officers. Accordingly, it applied *Barton* to lawsuits against UCC members and dismissed the complaint. In the district court's view, all of Blixseth's claims were "based on Brown's alleged misconduct as Chair of the Unsecured Creditors Committee," and the bankruptcy court never authorized the lawsuit. We previously dismissed Blixseth's appeal from this decision in an unpublished order, determining that it wasn't taken from a "final order."

Blixseth then asked the bankruptcy court for permission to bring his claims in district court. In his *Barton* motion, Blixseth explained that a number of his claims against Brown were based on pre-petition conduct that arose before the bankruptcy litigation began so they didn't relate to Brown's actions on the UCC. The bankruptcy court found it "impossible . . . to isolate Blixseth's so-called 'pre-petition malpractice and malfeasance' claims from Brown's activities as a member of the Unsecured Creditors Committee." In a final order, the bankruptcy court denied Blixseth permission to bring his claims in district court and dismissed the claims on the merits. Blixseth appealed to the district court, which affirmed the bankruptcy court. He now appeals to us.

## DISCUSSION

We review the bankruptcy court's order denying leave to sue for abuse of discretion. *See In re Crown Vantage*, 421 F.3d at 977. And we review de novo whether the bankruptcy court had authority to resolve Blixseth's claims on the merits. *See In re Ray*, 624 F.3d 1124, 1130 (9th Cir. 2010).

## I.  Applicability of *Barton*

**1.**  The *Barton* doctrine traditionally applies to actions against receivers and bankruptcy trustees.  *See In re Crown Vantage*, 421 F.3d at 970–71 (quoting *Barton*, 104 U.S. at 128); *Leonard* v. *Vrooman*, 383 F.2d 556, 560 (9th Cir. 1967).  The touchstone of the *Barton* inquiry is whether a suit challenges "acts done in [a trustee's] official capacity and within his authority as an officer of the Court."  *In re Crown Vantage*, 421 F.3d at 974 (quoting *Leonard*, 383 F.2d at 560); *In re Castillo*, 297 F.3d 940, 945 (9th Cir. 2002) ("[W]ithout leave of the bankruptcy court, no suit may be maintained against a trustee for actions taken in the administration of the estate." (quoting 3 *Collier on Bankruptcy* ¶ 323.03[3] (15th ed. rev. 2001))).

No court of appeals has held that *Barton* applies to suits against UCC members, but some have extended *Barton* to actors who aren't bankruptcy trustees or receivers.  The Sixth Circuit held that counsel for the trustee is entitled to *Barton* protection because he is the "functional equivalent of a trustee" for purposes of administering the estate.  *In re DeLorean Motor Co.*, 991 F.2d 1236, 1241 (6th Cir. 1993).  And the Eleventh Circuit bestowed *Barton* protection on individuals approved to conduct sales of estate property, adopting the "functional equivalent" test announced in *In re DeLorean*.  *Carter* v. *Rodgers*, 220 F.3d 1249, 1251, 1252 n.4 (11th Cir. 2000).

Blixseth argues that the *In re DeLorean* line of cases is inapposite because the defendants in those cases aided the trustee in maximizing the value of the estate.  Brown, Blixseth claims, owes no duty to the estate; rather, he represents creditors seeking payment *from* the estate.  But

Blixseth's view of the UCC's interests is too narrow. The UCC can only maximize recovery for the creditors by increasing the size of the estate. This alignment of interests may explain why the bankruptcy code permits UCCs to initiate the appointment of trustees. *See* 11 U.S.C. § 1103(c)(4); *see also* 7 *Collier on Bankruptcy* § 1103.05[1][e] (16th ed. 2016) (implying that the duties of the committee and trustee overlap because "the role of the committee may be reduced if a chapter 11 trustee is appointed"). Because creditors have interests that are closely aligned with those of a bankruptcy trustee, there's good reason to treat the two the same for purposes of the *Barton* doctrine.

UCC members are statutorily obliged to perform tasks related to the administration of the estate: They "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business." 11 U.S.C. § 1103(c)(2). They "participate in the formulation of a plan." *Id.* § 1103(c)(3). And they examine the debtor. *Id.* § 343; *see also* 3 *Collier on Bankruptcy* § 341.02[5][d]. A lawsuit challenging any of these actions could seriously interfere with already complicated bankruptcy proceedings. Even the fear that such a lawsuit could be filed—and UCC members would have to answer for their actions in a court unfamiliar with bankruptcy proceedings—may cause UCC members to be timid in discharging their duties. This is doubtless why the Commission to Study the Reform of Chapter 11 recommended extending the *Barton* doctrine to "estate neutrals, and statutory committees and their members." Am. Bankr. Inst., Comm'n to Study the Reform of Chapter 11, *2012–2014 Final Report and Recommendations* 43 (2014), *available at* https://abiworld.app.box.com/s/vvircv5xv83aa

vl4dp4h.  We conclude that *Barton* applies to UCC members like Brown who are sued for acts performed in their official capacities.  *See In re Crown Vantage*, 421 F.3d at 970.  Any such suit must be brought in the bankruptcy court, or in another court only with the express permission of the bankruptcy court.  *Id.* at 970–71.

**2.**  Some of Blixseth's claims allege misconduct by Brown prior to the bankruptcy proceedings.  For example, Blixseth alleges that Brown gave dubious legal advice in 2005 about how he could use funds from the Credit Suisse loan,  and, as a result, Blixseth became the target of a shareholder lawsuit.  Blixseth also alleges that Brown provided subpar representation during the shareholder litigation and divorce by overlooking key defenses and drafting provisions in the MSA that were later deemed unenforceable.

The bankruptcy court held that these claims are "so intertwined with and dependent upon Brown's actions as a member of the Unsecured Creditors Committee" that it is "impossible" to separate the pre-petition claims from Brown's activities on the UCC.  But Blixseth's pre-petition claims have nothing to do with Brown's position on the UCC.  These claims sound in tort, contract and fraud, and are untethered to Brown's position as Chair of the UCC.  And in his *Barton* motion, Blixseth clearly separated his pre-petition claims from the post-petition claims that implicated Brown's activities on the UCC.  Accordingly, Blixseth didn't need permission from the bankruptcy court before bringing his pre-petition claims in district court.  *See id.* at 974.  The courts below erred in concluding otherwise.

**3.**  Blixseth's remaining claims challenge conduct related to Brown's actions after he was appointed UCC chair.**[2]**  These claims challenge "acts done . . . within [Brown's] authority as an officer of the Court."  *Id.* (quoting *Leonard*, 383 F.2d at 560).  Blixseth needed the bankruptcy court's permission before bringing these claims in district court.

Bankruptcy courts have applied a five-factor test to decide whether to grant leave to sue in another forum pursuant to *Barton*, or to retain jurisdiction over the claims in bankruptcy court.  *See id.* at 976.  These factors are: (1) whether the acts complained of "relate to the carrying on of the business connected with the property of the bankruptcy estate," (2) whether the claims concern the actions of the officer while administering the estate, (3) whether the officer is entitled to quasi-judicial or derived judicial immunity, (4) whether the plaintiff seeks a personal judgment against the officer and (5) whether the claims seek relief for breach of fiduciary duty, through either negligent or willful conduct.  *In re Kashani*, 190 B.R. at 886–87.  Even satisfying "one . . . factor[] may be a basis for the bankruptcy court to retain jurisdiction."  *Id.* at 887.

---

**[2]** Blixseth alleges that Brown used confidential information that he learned while representing Blixseth.  He also claims that Brown drummed up support for a bankruptcy plan that made Blixseth liable to the debtors but exculpated Brown.  Finally, Blixseth claims that Brown testified against him in an adversary proceeding, thereby breaching his fiduciary duty.

Blixseth sought a personal judgment against Brown, thereby satisfying the fourth *Kashani* factor.[3] The bankruptcy court didn't abuse its discretion in denying Blixseth's *Barton* motion to bring his post-petition claims in district court.

## II. Final Adjudication of Claims

Blixseth also claims that the bankruptcy court lacked authority to decide his claims against Brown.

**1.**   Brown argues that we need not resolve the question of the bankruptcy court's authority because Blixseth consented to having his claims resolved on the merits and, even if he hadn't consented, the district court's de novo review cured any error. But Blixseth never expressly consented and, at the hearing on the *Barton* motion, he maintained that he had a "right to litigate his legal malpractice claims against Mr. Brown in district court." And the district court's de novo review didn't cure any error resulting from the bankruptcy court entering a final judgment on Blixseth's claims. Though the district court claimed to conduct a de novo review, it didn't undertake a meaningful "claim-by-claim analysis." *Dunmore* v. *United States*, 358 F.3d 1107, 1114 (9th Cir. 2004). The district court's order didn't afford Blixseth anything close to an independent decision by an Article III adjudicator. *See Wellness Int'l Network, Ltd.* v. *Sharif*, 135 S. Ct. 1932, 1946 (2015).

---

[3] The bankruptcy court also concluded that Brown satisfied the third *Kashani* factor because he was entitled to derived judicial immunity. But if Brown were entitled to judicial immunity, he couldn't be sued in *any* court. We question *Kashani* to the extent it suggests that an officer entitled to judicial immunity may be sued in the bankruptcy court that appointed him.

**2.**  Blixseth argues that the bankruptcy court exceeded its Article I jurisdiction under *Stern* v. *Marshall* by adjudicating his claims on the merits.  *Stern* prohibits bankruptcy courts from adjudicating "common law cause[s] of action, [that] neither derive[] from nor depend[] upon any agency regulatory regime."  564 U.S. 462, 494 (2011).  Blixseth points out that his claims sound in tort and contract and thus are "the stuff of the traditional actions at common law" that must be litigated in an Article III forum.  *N. Pipeline Constr. Co.* v. *Marathon Pipe Line Co.*, 458 U.S. 50, 90 (1982) (Rehnquist, J., concurring in the judgment).

Blixseth reads *Stern* too broadly.  *Stern* dealt with claims that didn't "stem[] from the bankruptcy itself" and wouldn't "necessarily be resolved in the claims allowance process." 564 U.S. at 499.  *Stern* thus precludes bankruptcy courts from deciding common law claims that have no connection to the bankruptcy estate other than that they happen to be assets of the estate.  *Barton* claims are different; they concern actions taken in a trustee's or officer's official capacity.  *See In re Crown Vantage*, 421 F.3d at 970.

Because *Barton* claims could not "exist independently of [a] bankruptcy case," *In re Harris*, 590 F.3d 730, 738 (9th Cir. 2009), they are not the "stuff of the traditional actions at common law tried by the courts at Westminster in 1789," *Stern*, 564 U.S. at 484 (quoting *N. Pipeline*, 458 U.S. at 90 (Rehnquist, J., concurring in the judgment)).  A suit against a bankruptcy court officer for actions undertaken in his official capacity necessarily "stems from the bankruptcy itself."  *Id.* at 499. We conclude that *Stern* doesn't preclude bankruptcy courts from adjudicating *Barton* claims.

**3.**   We review de novo the bankruptcy court's dismissal of Blixseth's claims on the merits.  *See Barrientos* v. *Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1188 (9th Cir. 2011). Blixseth raised three post-petition claims that relate to Brown's actions as Chair of the UCC.  *See supra* p. 10 note 2.  The bankruptcy court held that Brown, as an officer of the court, was entitled to derivative judicial immunity for actions taken as Chair of the UCC.  But Brown's position on the UCC doesn't entitle him to immunity for *all* actions as Chair. *See In re Castillo*, 297 F.3d at 953.  For derived judicial immunity to apply, Brown must have acted within the scope of his authority and "candidly disclosed [his] proposed acts to the bankruptcy court."  *In re Harris*, 590 F.3d at 742 (citations omitted).  Additionally, the debtor must have had notice of his proposed acts and the bankruptcy court must have approved these acts.  *Id.*

We remand for the bankruptcy court to consider whether Brown is entitled to derived judicial immunity for Blixseth's post-petition claims.  Unless he is, we see no reason Blixseth couldn't proceed to discovery on these claims.[4]

---

[4] Brown argues that Blixseth's claims are barred by the exculpation clause of the bankruptcy plan.  The clause covers any "act or omission in connection with, relating to or arising out of the Chapter 11 cases, [and] the formulation, negotiation, implementation, confirmation or consummation of this Plan."   Blixseth challenged the validity of the exculpation clause in a previous appeal.  We held that his challenge wasn't equitably moot and remanded for the district court to consider it in the first instance.  *See Blixseth* v. *Yellowstone Mountain Club, LLC*, 609 F. App'x 390 (9th Cir. 2015).  On remand, the district court upheld the clause, and Blixseth again appealed.  *Blixseth* v. *Yellowstone Mountain Club, LLC*, No. 2:11-cv-00065-SEH, Dkt. Nos. 163, 164 (D. Mont. Mar. 23, 2016 & Apr. 19, 2016).  The validity of the exculpation clause will be decided in that appeal so we express no view of the matter here.

*              *              *

Because *Barton* never applied to Blixseth's pre-petition claims, he can bring them in district court as he originally intended. We remand Blixseth's post-petition claims for further proceedings consistent with this opinion.

**AFFIRMED IN PART; VACATED IN PART; REMANDED IN PART.**

The parties shall bear their own costs.