NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0520n.06

No. 24-1945

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 04, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| In re: CHRISTOPHER D. WYMAN, | ) | |
| | ) | |
| Debtor. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| _____ | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN \| UNITED STATES |
| MICHAEL EDWARD TINDALL, | ) | BANKRUPTCY COURT FOR THE |
| Appellant, | ) | EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| v. | ) | |
| | ) | |
| SAMUEL D. SWEET, Trustee, | ) | OPINION |
| Appellee. | ) | |
| | ) | |

Before: WHITE, STRANCH, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. While representing clients in a bankruptcy case, Michael Tindall committed fraud on the court and was disbarred for unrelated misconduct. Undeterred, he took an interest in one of his client's claims and appealed a host of issues arising out of the bankruptcy. But all his arguments fail on forfeiture, jurisdictional, or merits grounds. We affirm in part and dismiss for lack of jurisdiction in part.

I

Christopher Wyman filed for bankruptcy in 2012. In his bankruptcy petition, Wyman claimed that he possessed less than $6,000 in assets and owed over $866,000 in liabilities. Wyman

also listed Barbara Duggan as a creditor because she had obtained a judgment against him for $28,655.48.

Before Wyman filed for bankruptcy, he transferred real property on Jones Road in Howell, Michigan, to Michelle Pichler. The issues in this appeal all start from efforts to avoid this allegedly fraudulent transfer. Duggan initially tried to set aside the transfer in state court and continued her efforts in Wyman's bankruptcy. She hired Michael Tindall (the appellant here) as her lawyer for this litigation. The then-appointed bankruptcy trustee also decided to hire Tindall as special counsel to represent him in avoiding the transfer. Tindall's current appeal requires us to discuss four events from the bankruptcy: three adversary proceedings in 2012, 2019, and 2020, and attorney's fees litigation in the main bankruptcy case.

1. *2012 Proceeding*. In 2012, Tindall opened an adversary proceeding against Pichler on behalf of the trustee and Duggan. Tindall alleged that Wyman had illegally transferred the Jones Road property to Pichler and sought to have the property returned to the estate. During discovery, the bankruptcy court ordered Pichler to produce certain documents. After the court's deadline passed, Tindall filed affidavits stating that Pichler had failed to comply. His affidavits led the court to enter a default judgment against Pichler transferring the Jones Road property to the estate in 2014.

But this victory proved illusory. It turned out that Tindall had lied to the bankruptcy court to obtain the default judgment. Pichler had turned over the required documents. And she had the receipts to prove it. As one example, Tindall told the bankruptcy court that the documents Pichler produced did "NOT include [her] personal checking account or her personal savings account." Order, No. 12-03348, R.422, Page 9 (citation omitted). But Pichler kept the emails showing that she had sent these records. As another example, Tindall told the bankruptcy court that he had

examined "the materials contained" in a package from Pichler and that these materials "DO NOT comply with this Court's Order[.]" *Id.* at 10 (citation omitted). Yet the post office returned the package to Pichler as "unclaimed." *Id.* at 10–11. The bankruptcy court thus found it "highly unlikely" that Tindall examined the package. *Id.* at 16 n.15. In November 2017, the court held that "Tindall committed fraud on the court" and vacated the default judgment. *Id.* at 20.

In the meantime, two significant events occurred. First, Samuel Sweet (the appellee here) took over as trustee after the original trustee retired. Second, the Michigan Attorney Discipline Board disbarred Tindall for unrelated misconduct. The chief judge for the Eastern District of Michigan prohibited him from appearing in district court or bankruptcy court within that district. Tindall thus could no longer represent the trustee or Duggan in this adversary proceeding. Sweet, the new trustee, chose to represent himself. Duggan did not find another attorney in time, so the court dismissed her with prejudice from this 2012 adversary proceeding.

Sweet and Pichler soon settled. Pichler agreed to transfer the Jones Road property to the estate. In March 2018, the court dismissed the proceeding.

Yet that dismissal did not end things. Tindall reappeared five years later in December 2022. He claimed that Duggan had assigned her interest to him. And he moved to reopen the judgment as "void" under Federal Rule of Civil Procedure 60(b)(4). His reason? He alleged that the orders overturning the default judgment violated Duggan's due-process rights because the bankruptcy court had not given her adequate notice. The court denied the motion.

2. *2019 Proceeding*. In January 2019, Sweet initiated an adversary proceeding against Duggan. Duggan had claimed to be a secured creditor, and Sweet sought to have her declared an unsecured one. Duggan obtained a different lawyer to represent her in this 2019 proceeding. But since Duggan had assigned Tindall an interest in her claim, he also appeared in the proceeding.

A short time after Sweet opened the proceeding, he successfully sold the Jones Road property for $65,000. He also agreed to pay Duggan the full amount of her initial claim plus interest ($32,288.91). He thus quickly sought to dismiss this proceeding.

Yet Tindall and Duggan responded with a counterclaim alleging that Sweet had breached his fiduciary duties as trustee. Sweet answered the counterclaim, without raising any affirmative defenses. Sweet later sought summary judgment on the counterclaim. Before the bankruptcy court ruled on that motion, Tindall and Duggan moved to transfer the counterclaim to the district court on the ground that the bankruptcy court lacked jurisdiction to enter a final judgment on it. The district court denied that motion. The proceeding then sat dormant for years.

Sweet eventually renewed his summary-judgment motion asserting that he was entitled to "absolute immunity" because he had followed a court order when taking the actions alleged to have breached his fiduciary duties. Mot., No. 19-03018, R.88, Page 4. And Sweet amended his answer to add this defense. The bankruptcy court granted summary judgment to Sweet on immunity grounds. It also construed Sweet's amended answer as a *motion* to amend his answer under Federal Rule of Civil Procedure 15 and granted him leave to add this defense.

3. *2020 Proceeding*. Although Sweet paid Duggan the full amount of her claim plus interest, Tindall suggested that the Bankruptcy Code also allowed her to obtain attorney's fees. Sweet responded with this 2020 proceeding to declare Duggan's claim satisfied. Sweet alleged that after he had wired the $32,288.91 payment, Duggan's new attorney represented that this payment satisfied the claim in full. Sweet thus brought promissory estoppel and (apparently in the alternative) contract claims against Duggan. Tindall and Duggan denied these allegations and filed another fiduciary-duty counterclaim against Sweet.

The parties both moved for summary judgment. Sweet prevailed. The bankruptcy court granted summary judgment to Sweet on his contract claim, holding that he had fully satisfied Duggan's secured claims. And it granted summary judgment to Sweet on Tindall and Duggan's counterclaim by finding Sweet immune again.

4. *Fees Motions in Bankruptcy Case*. While completing these adversary proceedings, Tindall and Sweet also fought over their attorney's fees in the main bankruptcy case. After Sweet paid Duggan her claim plus interest, the estate had around $32,000 left from the sale of the Jones Road property. Tindall sought attorney's fees from this fund for his representation of the trustee in the 2012 adversary proceeding before his disbarment. This application set off a dispute between Tindall and Sweet over who had priority to obtain fees for their work during that proceeding. Sweet challenged Tindall's fees based on his disbarment and failure to complete the recovery of the Jones Road property. He also moved to sanction Tindall for his fraud. Tindall, by contrast, alleged that Sweet's appointment as attorney for the estate violated a bankruptcy rule.

The bankruptcy court issued several decisions resolving most of these motions. The court first found Tindall entitled to fees for his work on the 2012 proceeding. But it capped these fees at $21,869.33 and said that it would further reduce this amount by the fees that Sweet incurred to complete that proceeding. The court then found that Sweet properly served as an attorney and awarded him fees and expenses in the amount of $19,781 for the 2012 proceeding. But the court has never entered an order deciding on the amount of fees (if any) that Tindall should receive for that 2012 proceeding. And it has stayed Sweet's motion for sanctions against Tindall pending the completion of this appeal.

\* \* \*

In one notice of appeal, Tindall sought the district court's review of several decisions that the bankruptcy court issued across these four proceedings. When Tindall got to the district court, he also moved to recuse the district judge assigned to his case because she was the chief judge who had ordered his disbarment from federal court in 2017. The district court denied all his claims. *See In re Wyman*, 2024 WL 4361959, at \*4 (E.D. Mich. Sept. 30, 2024).

## II

Tindall raises twelve issues for our review. We will group these issues together based on the bankruptcy proceeding in which they arose. And setting aside the district court's recusal ruling, we review the bankruptcy court's orders "directly without deferring to the district court's" decision. *In re Cambrian Holding Co.*, 110 F.4th 889, 896 (6th Cir. 2024).

### A. 2012 Proceeding

We start with the 2012 proceeding (in which the trustee and Duggan sought to vacate Wyman's transfer of the Jones Road property). Tindall appeals from the bankruptcy court's denial of his motion to vacate this proceeding's final judgment as "void" under Federal Rule of Civil Procedure 60(b)(4). Recall that Sweet and Pichler settled the proceeding after the district court disbarred Tindall and the bankruptcy court dismissed Duggan for failing to get a replacement attorney. Some five years after this settlement, Tindall alleged that the bankruptcy court had violated Duggan's due-process rights by overturning its earlier default judgment against Pichler (the one he had obtained through fraud) without giving Duggan adequate notice. This due-process violation allegedly rendered the later stipulated judgment "void." The bankruptcy court rejected Tindall's claim on two grounds. It held that the judgment was not "void" because it had not violated due process. And it held that Tindall had not timely filed his motion anyway.

Tindall now challenges this order. But we may reject his challenge under established forfeiture rules. When a court rejects a claim on "two alternative grounds," appellants must raise both grounds on appeal. *Stewart v. IHT Ins. Agency Grp., LLC*, 990 F.3d 455, 456 (6th Cir. 2021). If they challenge only one of the grounds, they have "forfeited any challenge to the unbriefed ground." *Blick v. Ann Arbor Pub. Sch. Dist.*, 105 F.4th 868, 884 (6th Cir. 2024). And we may affirm the judgment on that ground alone (without reaching the merits of the briefed one). *See id.*

This rule applies here. Tindall challenges the bankruptcy court's holding that it did not enter a "void" judgment. But he does not mention the court's alternative rationale: that he did not file his motion in time. Rule 60(c) sets the timelines for Rule 60(b) motions: "A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). Because Tindall moved to vacate the judgment under Rule 60(b)(4), he was not subject to Rule 60(c)(1)'s one-year deadline. *See id.* Under our cases, though, his motion triggered this rule's "reasonable time" requirement. *See In re Vista-Pro Auto., LLC*, 109 F.4th 438, 442 (6th Cir. 2024), *cert. granted sub nom. Coney Island Auto Parts Unlimited, Inc. v. Burton*, 145 S. Ct. 2775 (2025). Yet Tindall does not even mention—let alone dispute—the bankruptcy court's holding that he did not file his motion within a reasonable time under Rule 60(c)(1). Order, No. 12-03348, R.451, Page 28. He has thus forfeited any contrary claim. *See Blick*, 105 F.4th at 884.

In response, Tindall raises a new theory on appeal: that the bankruptcy court lacked subject-matter jurisdiction to dismiss this proceeding after the parties had settled because the district court had withdrawn two of the claims as "non-core" before this final dismissal. According to Tindall, then, only the district court (not the bankruptcy court) could enter the stipulated dismissal for these specific claims. And he argues that "[t]he absence of subject matter jurisdiction may be raised at

any time, by any party, or even *sua sponte* by the court itself." Appellant's Br. 41 (citing *In re Lewis*, 398 F.3d 735, 739 (6th Cir. 2005)). But this claim cannot overcome his forfeiture because we have held that Rule 60(c)(1)'s timeliness requirements apply even to claims that a judgment is void for lack of subject-matter jurisdiction. *See Vista-Pro Auto.*, 109 F.4th at 443–44 (discussing *United States v. Dailide*, 316 F.3d 611, 617 (6th Cir. 2003)).

## B. 2019 and 2020 Proceedings

Tindall next challenges the bankruptcy court's orders finding Sweet immune from Tindall's fiduciary-duty counterclaims in the 2019 and 2020 proceedings. Tindall nowhere disputes the bankruptcy court's conclusion that Sweet is immune from liability because he took the actions that Tindall challenges pursuant to court orders. Rather, Tindall argues both that Sweet forfeited this immunity defense and that the bankruptcy court lacked the constitutional power to resolve his counterclaims anyway. Tindall is wrong on both counts.

*Forfeiture*. Tindall first argues that the bankruptcy court wrongly allowed Sweet to amend his answer to raise this defense in the 2019 proceeding. Bankruptcy courts must follow Federal Rule of Civil Procedure 15 when deciding whether to allow parties to amend their pleadings. *See* Fed. R. Bankr. P. 7015. Under Rule 15, "a party may amend its pleading" if it obtains "leave" of the court. Fed. R. Civ. P. 15(a)(2). And the court "should freely give leave when justice so requires." *Id.* The Supreme Court has identified various reasons why a court might refuse to permit an amendment, including (for example) "undue delay," the moving party's "bad faith or dilatory motive," or "undue prejudice to" the other side. *Foman v. Davis*, 371 U.S. 178, 182 (1962). We review a decision to allow an amendment for "an abuse of discretion." *Rayfield v. Am. Reliable Ins. Co.*, 641 F. App'x 533, 536 (6th Cir. 2016).

We find no abuse of discretion here. The bankruptcy court acknowledged Sweet's initial failure to plead immunity as a defense. But it reasonably excused Sweet's delay. To start, Sweet had "raised the issue of immunity" in an "early" summary-judgment motion only two months after Tindall asserted the counterclaim. Op., No. 19-03018, R.115, Page 8; *see Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994). And the court did not fault Sweet for the rest of the delay before he sought to amend his answer because most of it resulted from Tindall's unsuccessful appeal on an unrelated matter. So it saw no long period of "unexplained delay," *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 641 (6th Cir. 2018), that might suggest "bad faith" or a "dilatory motive" on Sweet's part, *Foman*, 371 U.S. at 182. Lastly, the court concluded that the amendment would not "prejudice[]" Tindall because the parties had not engaged in "any activity, much less extensive litigation," in the proceeding. Op., No. 19-03018, R.115, Page 9; *see Phelps*, 30 F.3d at 662–63.

In response, Tindall repeatedly notes that a defendant forfeits an affirmative defense by failing to plead it. But even Tindall's cases show that defendants can amend pleadings. For example, he cites the Supreme Court's decision in *Wood v. Milyard*, 566 U.S. 463 (2012). But *Wood* explains that defenses are "forfeited if not raised in a defendant's answer *or in an amendment thereto*." *Id.* at 470 (emphasis added) (citation omitted). So that argument falls flat.

Tindall next notes that Sweet "unilaterally filed" the amendment without first getting leave from the bankruptcy court. Appellant's Br. 45. But the bankruptcy court reasonably construed this "pleading" as a motion to amend. Op., No. 19-03018, R.115, Page 9. Tindall identifies no prejudice that resulted from this reading of the document. Indeed, he was fully able to challenge Sweet's immunity defense on the merits.

Turning to the 2020 proceeding, Tindall lastly suggests that the bankruptcy court raised the immunity defense "*sua sponte*" there. Appellant's Br. 47. He is mistaken. Sweet raised this

9

defense in his motion to dismiss Tindall's counterclaim and again in his summary-judgment motion. Mot., No. 20-03012, R.24, Pages 5–6; Mot., No. 20-03012, R.50, Pages 5–7.

*Constitutional Power.* Tindall next argues that the "bankruptcy court had no constitutional power" to enter a final judgment rejecting his fiduciary-duty counterclaims against Sweet. Appellant's Br. 52. He asserts that the Constitution required a federal district court to resolve these claims. But his conclusory analysis fails to establish any constitutional violation.

In *Stern v. Marshall*, 564 U.S. 462 (2011), the Supreme Court held that only an Article III district court—not an Article I bankruptcy court—could resolve a debtor's state-law counterclaim against a creditor who had filed a proof of claim against the debtor. *See id.* at 470, 487. The Court suggested that a bankruptcy court could conclusively adjudicate an issue only if the issue "stem[med] from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Id.* at 499; *see Waldman v. Stone*, 698 F.3d 910, 919 (6th Cir. 2012). And it held that a debtor's claim against a creditor that arose outside the bankruptcy process under state law did not fit within these categories. *See Stern*, 564 U.S. at 498–99. After *Stern*, we reached a similar result in *Waldman* for a debtor's fraud claims against a creditor. *See* 698 F.3d at 921.

Tindall invokes *Stern* and *Waldman*. But he offers almost no analysis as to why they should apply. And the debtor's counterclaims in those cases look nothing like Tindall's counterclaims. The claims in *Stern* and *Waldman* challenged the creditors' conduct outside the bankruptcy. Tindall's claims challenge the trustee's conduct within the bankruptcy by alleging that the trustee breached his fiduciary duties when administering the estate. These claims thus "stem[] from the bankruptcy itself" in a way that the claims in *Stern* and *Waldman* did not. *In re Yellowstone Mountain Club, LLC*, 841 F.3d 1090, 1097 (9th Cir. 2016) (quoting *Stern*, 564 U.S. at 499). Indeed, under the common-law *Barton* rule (named after *Barton v. Barbour*, 104 U.S. 126 (1881)),

10

a party could not even sue a trustee outside the bankruptcy court for the performance of the trustee's official duties without obtaining the bankruptcy court's permission. *See In re McKenzie*, 716 F.3d 404, 414 (6th Cir. 2013); *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240–41 (6th Cir. 1993); *see also Farrier v. Leicht*, 2020 WL 13017227, at *2–3 (6th Cir. Nov. 24, 2020) (order). And the only circuit court to have considered the question has held that a claim that falls within *Barton* falls outside *Stern*. *See Yellowstone*, 841 F.3d at 1096–97. Tindall offers no reasoning to reach a contrary conclusion. We thus need not consider when (if ever) claims that fall within *Barton* could ever require an Article III court for their final adjudication.

### C. Attorney's Fees Disputes

Tindall next challenges the bankruptcy court's resolution of the attorney's fees disputes. He argues both that the bankruptcy court could not award fees to Sweet and that it mistakenly limited his own fees. But he forfeited his first claim, and we lack jurisdiction over his second.

*Sweet's Fees*. Tindall asserts that the bankruptcy court could not lawfully award attorney's fees to Sweet for his legal work on behalf of the estate to resolve the 2012 proceeding after the district court disbarred Tindall. According to Tindall, the bankruptcy court could not pay these fees because it never "properly" appointed Sweet. Appellant's Br. 27.

His argument requires us to discuss background bankruptcy law. The Bankruptcy Code allows a trustee, "with the court's approval," to hire "attorneys" "to represent or assist the trustee in carrying out the trustee's duties" as long as the attorneys "do not hold or represent an interest adverse to the estate[.]" 11 U.S.C. § 327(a). It also permits a court to "authorize the trustee to act as attorney . . . for the estate if such authorization is in the best interest of the estate." *Id.* § 327(d). The Federal Rules of Bankruptcy Procedure (or the "Bankruptcy Rules," for short) set out further procedures for employing professionals. Bankruptcy Rule 2014 provides that the court "may

approve the employment of an attorney . . . only on the trustee's . . . application." Fed. R. Bankr. P. 2014(a)(1). The trustee "must file the application" and "send a copy to the United States trustee." Fed. R. Bankr. P. 2014(a)(2). And the application "must state specific facts showing," among other things, "the need for the employment," "the professional services to be rendered," "any proposed arrangement for compensation," and "the person's connections with" interested parties. *Id.* Finally, the "application must be accompanied by a verified statement of the person to be employed" confirming that person's disinterestedness. Fed. R. Bankr. P. 2014(a)(3).

District courts also "may make and amend" local bankruptcy rules as long as those local rules are "consistent with" the Bankruptcy Rules. Fed. R. Bankr. P. 9029(a)(1)(A). The Eastern District of Michigan has adopted Local Bankruptcy Rules that further regulate the trustee's employment of professionals. According to Local Rule 2014-1 "whenever a chapter 7 panel trustee seeks to be appointed as trustee's attorney, an order appointing that person as attorney will be deemed to have been entered without the formal entry of an order, effective upon the filing of the verified statement required by" Bankruptcy Rule 2014(a)(3). E.D. Mich. LBR 2014-1(c).

In this case, Sweet filed an affidavit to represent the estate as its attorney and verified his disinterestedness under Local Rule 2014-1(c). Tindall now argues that this Local Rule is invalid because it conflicts with Bankruptcy Rule 2014. The Local Rule, Tindall says, "dispenses with" several of the Bankruptcy Rule's requirements, including that a potential attorney file "an Application" and serve this "Application on the U.S. Trustee" and that the court issue a "written order" approving the appointment. Appellant's Br. 26–27 (emphasis omitted). Because the court's appointment of Sweet allegedly violated Bankruptcy Rule 2014, Tindall concludes that Sweet could not seek his fees for work on behalf of the estate.

The bankruptcy court rejected Tindall's argument for two reasons. First, it found that the Local Rule did not "conflict with the Bankruptcy Rule." Op., No. 12-32264, R.324, Page 6. Second, and in the alternative, it held that Sweet's affidavit met "the requirements of Rule 2014(a) even when that section arguably does not apply." *Id.* In other words, the bankruptcy court construed Sweet's affidavit (the verified statement) as an application and held that this application met the requirements of Bankruptcy Rule 2014 even if it preempted Local Rule 2014-1.

We may again resolve this claim on forfeiture grounds. We view the bankruptcy court's two conclusions as "independent grounds" for permitting Sweet's fees. *Blick*, 105 F.4th at 884. On appeal, Tindall has challenged only the bankruptcy court's first ground (that the Local Rule comports with the Bankruptcy Rule) and not its second one (that Sweet's application comports with the Bankruptcy Rule). He thus forfeited any challenge to that second holding. *See id.* And we may affirm on that basis alone without opining on the validity of the Local Rule. *See id.*

*Tindall's Fees*. Tindall also challenges the bankruptcy court's order over his attorney's fees request for his work representing the trustee in the 2012 proceeding. Although tentatively allowing Tindall to seek fees, this order capped the fees at $21,869.33 and indicated that the court would reduce any award by the amount of fees that Sweet incurred to complete that proceeding. Tindall argues that the bankruptcy court wrongly capped his fees because it lacked discretion to reduce them below the amounts identified in his "pre-approved fee agreement" with the trustee. Appellant's Br. 31. And he argues that the court could not reduce his fees based on Sweet's separate award because his attorney's fees took "priority" over Sweet's award. *Id.* at 37–38.

But the district court lacked jurisdiction over these premature arguments. In bankruptcy appeals, district courts have jurisdiction over "final judgments, orders, and decrees" arising out of bankruptcy "cases and proceedings." 28 U.S.C. § 158(a); *see Bullard v. Blue Hills Bank*, 575 U.S.

13

496, 501–02 (2015). A bankruptcy court issues a "final" order if it "definitively" resolves a "discrete dispute[] within the overarching bankruptcy case." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 37 (2020). And when it comes to attorney's fees, this test requires the bankruptcy court to have "conclusively" determined an attorney's "compensation." *In re Boddy*, 950 F.2d 334, 336 (6th Cir. 1991). An "interim fee award" does not suffice. *Id.*

The bankruptcy court's orders discussing Tindall's motion for attorney's fees do not satisfy this finality test. True, the court tentatively suggested that Tindall could seek his fees. And it placed limits on these fees (such as the cap and the reduction for Sweet's fees). But it has never "conclusively" determined the amount that Tindall should receive. *Id.* Nor is it obvious that the bankruptcy court will ever award Tindall *any* fees. Recall that the court held that Tindall committed fraud when litigating the 2012 proceeding—the very proceeding for which he seeks his fees. As a result, Sweet has moved the court to sanction Tindall. The court has yet to resolve this motion. But any sanction order might include a denial of fees. In sum, without any "final" decision on the amount of Tindall's fees, the district court lacked jurisdiction over interlocutory orders concerning those fees. 28 U.S.C. § 158(a)(1).

Tindall counters that Sweet argued that Tindall should get "paid nothing" for his efforts in the 2012 proceeding. Reply Br. 9. Yet the bankruptcy court only "partially" agreed with Sweet. Order, No. 12-32264, R.391, Page 1. So it has yet to deny fees to Tindall. Nor has it set the amount of any fees it might allow. The district court thus lacked jurisdiction because Tindall's request for fees remains outstanding in the bankruptcy court. *See Boddy*, 950 F.2d at 336.

### D. Motion for Recusal

Tindall lastly argues that the district judge harbored bias against him and wrongly refused to recuse herself from his appeal. Under federal law, a district judge must recuse from a case when

one of the parties "files a timely and sufficient affidavit that the judge . . . has a personal bias or prejudice either against him or in favor of any adverse party[.]" 28 U.S.C. § 144. To be "sufficient," the affidavit must "state the facts and the reasons for the belief that bias or prejudice exists[.]" *Id.* And these alleged facts (when taken as true) must rise to a level that would lead "a reasonable, objective person" to "question[] the judge's impartiality." *United States v. Hartsel*, 199 F.3d 812, 820 (6th Cir. 1999) (quoting *Hughes v. United States*, 899 F.2d 1495, 1501 (6th Cir. 1990)). That is, the judge must have a "disposition" toward a party that one could describe as "wrongful or inappropriate" in some way. *Liteky v. United States*, 510 U.S. 540, 550–51 (1994). This type of inappropriate disposition might arise, for example, if it "rests upon knowledge that the [judge] ought not to possess" or if "it is excessive in degree." *Id.* at 550. And we review a district court's conclusion that it did not harbor this type of disqualifying bias or prejudice "for an abuse of discretion." *Burley v. Gagacki*, 834 F.3d 606, 616 (6th Cir. 2016).

The district judge did not abuse her discretion in declining to recuse from Tindall's appeal. Tindall argued that this judge had bias against him because she was the chief judge who entered the order disbarring him from practicing before the court back in 2017. The district judge reasonably rejected this claim. To start, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky*, 510 U.S. at 555. And judicial opinions from "prior proceedings" can necessitate recusal only if they show "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* But the disbarment order showed nothing of the kind. Indeed, the district judge engaged in a mere administrative task when issuing the disbarment order. The Local Rules in the Eastern District of Michigan—in particular Local Rule 83.22(g)— *required* the district's chief judge to impose the same punishment that Tindall had received from the Michigan Attorney Discipline Board. *See* E.D. Mich. LR 83.22(g)(1).

15

Tindall's responses do not change things. He first claims that the judge had a mandatory duty to recuse once he submitted a "legally sufficient" affidavit. Appellant's Br. 54. But his affidavit was not "sufficient" because the alleged facts (that the judge had issued his disbarment order) did not suffice to show bias "as a matter of law." *United States v. Bell*, 351 F.2d 868, 878 (6th Cir. 1965); *cf. Consol. Rail Corp. v. Yashinsky*, 170 F.3d 591, 597–98 (6th Cir. 1999). Contrary to Tindall's claim, judges need not automatically recuse whenever a party files a timely affidavit. Rather, a judge has a "strong duty to sit" if the facts alleged do not show the required bias. *United States v. Angelus*, 258 F. App'x 840, 842 (6th Cir. 2007) (citation omitted).

Tindall also argues that the disbarment order showed bias because it "violated multiple provisions" of Local Rule 83.22(e). Appellant's Br. 55. That argument fares no better. For starters, Tindall's brief merely listed various procedural protections in Local Rule 83.22(e). He thus likely forfeited this argument by failing to "adequately develop it" in his opening brief. *Blick*, 105 F.4th at 881–82. Besides, Local Rule 83.22(e)'s protections apply to the disciplinary process when a party makes accusations of misconduct against a lawyer. These requirements are likely irrelevant here because the district judge disbarred Tindall under Local Rule 83.22(g) instead. As discussed, this subsection *automatically* required the judge to impose the same discipline as that which the Michigan authorities found appropriate. So Local Rule 83.22(e)'s various procedural protections likely did not apply. At the least, Tindall has not explained why they did.

\* \* \*

For the most part, we affirm. But we dismiss Tindall's appeal of the orders about his attorney's fees for lack of jurisdiction.

16